Maria E. TOMAIOLO; Roger R. Cote and Marie C. Cote; Michael J. Gallagher and Nanette D. Gallagher; Raymond E. Trudeau, Jr. and Patricia A. Trudeau; Maurice J. Turcotte and Barbara Turcotte; Robert J. Bray and Elizabeth A. Bray; John C. Bogue and Diane C. Bogue; Linda Larson; Karen Pagliarini; Charles D. Monahan and Patricia A. Monahan;

Charles A. Ross and Heather E. Ross; Christopher G. Coogan and Nancie R. Coogan; and Matthew Weaver and Patricia Weaver; Individually and on behalf of a class of persons similarly situated, Plaintiffs,

v.

TRANSAMERICA CORPORATION; Beni Osuna; Mark Williams; James P. Houghton; John Doe and Jane Doe, being officers and agents of Transamerica Corporation whose identities are not yet known to the plaintiffs; Michael D. Mallinoff, in his capacity as City Manager of the City of Newport; Joel Johnson, in his former capacity as Town Treasurer and Tax Collector of the Town of Barrington; John Day, in his capacity as Town Treasurer of the Town of Bristol; Audrey Cornell, in her former capacity as Tax Collector of the Town of Coventry; John Doe, in his capacity as Finance Director of the Town of Cumberland; Suzanne J. Wheelock, in her capacity as Finance Director of the Town of East Greenwhich; Pamela J. Fontaine, in her capacity as Tax Collector of the Town of Foster; Jane A. Steere, in her capacity as Tax Collector of the Town of Glocester; Frances Shocket, in her former capacity as Finance Director of the Town of Jamestown; Claudette A. Paine, in her capacity as Finance Director of the Town of Lincoln; William A. Hanlon, in his former capacity as Finance Director of the Town of Middletown; David L. Krugman, in his capacity as Tax Collector of the Town of Narragansett; Henrietta T. Delga, in her capacity as Finance Director of the Town of North Smithfield; Bruce Young, in his capacity as Supervisor of Collections and Disbursements of the City of Pawtucket; Anthony Annarino, in his capacity as Tax Collector of the City of Providence; Stephen T. Napolitano, in his capacity as Treasurer of the City of Providence; Shir-ley E. Baton, in her capacity as Tax Collector of the Town of West Greenwhich; Carolyn Joaquin, in her capacity as Tax Collector of the Town of West Warwick; Frank Juchnick, in his capacity as Tax Collector of the City of Central Falls; Doris M. Yeaw, in her capacity as Tax Collector of the Town of Scituate; Janette H. Hopkins, in her capacity as Tax Collector of the Town of Charlestown; Kathleen S. DeLuca, in her former capacity as Tax Collector of the City of Cranston; Dorothy E. Caldwell, in her capacity as Tax Collector of the Town of Exeter; Kenneth L. Richardson, Jr., in his capacity as Tax Collector of the Town of Johnston; John Doe or Jane Doe, in his capacity as Tax Collector of the Town of North Kingstown; William A. Rotella, Jr., in his capacity as Tax Collector of the Town of North Providence; Robert E. Gordon, in his former capacity as Tax Collector of the Town of Portsmouth; Diane Larisa, in her capacity as Tax Collector of the Town of Richmond; Dennis G. Finlay, in his capacity as Tax Collector of the Town of Smithfield; Mary Ann Packer, in her capacity as Tax Collector of the Town of South Kingstown; Nancy Mello, in her capacity as Tax Collector of the Town of Tiverton; Kathleen A. Raposa, in her capacity as Tax Collector in the Town of Warren; Carol A. Touzin, in her capacity as City Treasurer of the City of Woonsocket; John P. Mainville, in his capacity as Tax Collector of the Town of Burrillville; and John Doe and Jane Doe, being any appointed officials of any of the Cities and Towns in the State of Rhode Island who participated in the tax collection practices described herein; and the Cities and Towns of Barrington, Bristol, Coventry, Cumberland, East Greenwhich, Foster, Glocester, Jamestown, Lincoln, Middletown, Narragansett, Newport, North Smithfield, Pawtucket, Providence, West

Greenwich, West Warwick, Central Falls, Scituate, Charlestown, Cranston, Exeter, Johnston, North Kingstown, North Providence, Portsmouth, Richmond, Smithfield, South Kingston, Tiverton, Warren, Woonsocket, and Burrillville and any other Rhode Island municipality that participated in the tax collection practices complained of herein, Defendants.

No. 98–161 L.

United States District Court,
D. Rhode Island.

Feb. 20, 2001.

Thomas W. Kelly, Newport, RI, for Plaintiffs.

Marc DeSisto, Kathleen M. Powers, Providence, RI, Richard G. Riendeau, City Solicitor's Office, Providence City Hall, Providence, RI, Michael Anthony Ursillo, Nancy Ellen Giorgi, Providence, RI, Mark W. Freel, Kimberly A. O'Connell, Edwards & Angell, Providence, RI, Edmund L. Alves, Blish & Cavanagh, Providence, RI, Eileen G. Cooney, East Providence, RI, Albert Lauriston Parks, III, Hanson, Curran, Parks & Whitman, Providence, RI, Mark P. Welch, Pawtucket, RI, for Defendants.

## OPINION AND ORDER

Lagueux, District Judge.

This case is before the Court on cross motions for summary judgment. "Plaintiffs," the twenty-three above named individuals, are real property owners and taxpayers in various cities and towns in Rhode Island who claim that their federal and state rights were violated by "defendants": Transamerica Corporation; employees of Transamerica, including Beni Osuna, Mark Williams, James P. Houghton, John Doe, and Jane Doe (collectively the "Transamerica Defendants"); the above named municipal officials; and Rhode Island municipalities (collectively the "Municipal Defendants").

Plaintiffs have stated five causes of action in their Sixth Amended Complaint and request that this Court certify a class for the first four of those claims. First, plaintiffs have brought suit under 42 U.S.C. § 1983 (Supp.1996), alleging that the Municipal Defendants violated their rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution when they required those homeowners who paid their property taxes through third parties such as banks, mortgage companies, and escrow agents to pay the taxes in annual lump sum payments, rather than quarterly, for the years 1995–1999. Plaintiffs allege further that the Transamerica Defendants conspired with the Municipal Defendants to deprive plaintiffs of their federal constitutional rights and are, therefore, also liable under § 1983. Pursuant to their § 1983 claims, plaintiffs seek several forms of relief, including a permanent injunction prohibiting all defendants from interfering with plaintiffs payment of property taxes under R.I. Gen. Laws § 44–5–7 (1999) and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617 (1994 &

Supp.1998); compensatory damages for the time value of the tax monies paid in advance of their alleged due date and for deprivation of property without due process of law; punitive damages for the alleged deliberate interference with and indifference to the legal rights of plaintiffs; and attorneys' fees and costs under 42 U.S.C. § 1988(b) (Supp.1996). The second cause of action is to the effect that defendants violated plaintiffs' rights under Article 1 Section 2 of the Rhode Island Constitution. The third claim is that defendants intentionally interfered with plaintiffs' contractual relations. The fourth allegation is that defendants violated the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws §§ 42–112–1 to 42–112–2 (1998). Finally, a single plaintiff, Maria E. Tomaiolo, seeks a declaratory judgment against the City of Newport under 28 U.S.C. §§ 2201 and 2202 (1994) to allow her to pay her taxes through her bank in quarterly installments. Plaintiffs pray for an amalgam of injunctive and declaratory relief, as well as compensatory and punitive damages for the alleged state law violations.

With the exception of Tomaiolo's individual complaint against the City of Newport, plaintiffs have made all of their allegations against both the Municipal Defendants and the Transamerica Defendants. But for purposes of clarity, this Court will discuss the allegations against the different sets of defendants in turn, beginning with those claims against the Municipal Defendants. Despite their numerous allegations against the Municipal Defendants, only plaintiffs' § 1983 claim provides a basis for federal jurisdiction in this case. Although plaintiff Tomaiollo's request for declaratory relief against the City of Newport is made pursuant to federal statutes 28 U.S.C. §§ 2201 and 2202, those provisions do not, by themselves, confer federal jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); 28 U.S.C. § 2201; *id.* § 2202. Those statutes only provide a federal court with the discretionary power to grant declaratory relief and other "necessary or proper relief" in cases in which the federal court already has jurisdiction. 28 U.S.C. § 2201(a); *id.* § 2202. Clearly, claims two, three, and four in plaintiffs' Sixth Amended Complaint are all founded on state law and do not provide any basis for federal court jurisdiction. Accordingly, this Court, initially, must only consider plaintiffs' claims under § 1983 against the Municipal Defendants to determine if federal jurisdiction exists as to those Defendants.

Plaintiffs' allegations against the Municipal Defendants under § 1983 raise three issues which this Court must address. First, does the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341 (1994), prohibit this Court from exercising jurisdiction over plaintiffs' request for injunctive and declaratory relief? Second, does the principle of comity prevent this Court from taking jurisdiction over plaintiffs' claims for damages? And third, does the fact that the tax collection policies at issue in this case are no longer in effect allow this Court to exercise jurisdiction over plaintiffs' claims? For the reasons discussed below, this Court concludes that the TIA and the principle of comity deprive this Court of subject matter jurisdiction over plaintiffs' § 1983 claims for injunctive and declaratory relief and also damages. In addition, because the policy against interference by the federal judiciary in state tax matters is so strong, this Court lacks jurisdiction over this case even though the underlying tax collection policies are no longer in use. Accordingly, plaintiffs' allegations against the Municipal Defendants are dismissed without prejudice for lack of subject matter jurisdiction.

The TIA also bars this Court from considering plaintiff Tomaiolo's request for injunctive and declaratory relief against the City of Newport. That claim is also dismissed without prejudice.

The analysis of plaintiffs' claims against the Transamerica Defendants differs somewhat. As discussed above, plaintiffs

allege that the Transamerica Defendants conspired with the Municipal Defendants to violate plaintiffs' constitutional rights in violation of § 1983. In addition, they have brought the same state law claims against the Transamerica Defendants, including: violation of Article 1, Section 2 of the Rhode Island Constitution; tortious interference with contractual relations; and violation of plaintiffs' civil rights under R.I. Gen. Laws § 42–112–1. Because plaintiffs have alleged no set of facts on which a reasonable person could find in their favor on any of their allegations, this Court grants the Transamerica Defendants' motion for summary judgment on all counts.

## I. Background.

Plaintiffs are real property owners in various Rhode Island cities and towns who had mortgages on their properties from 1995 to 1999 with banks or mortgage companies that escrowed and paid their property taxes. The property taxes owed by plaintiffs to various Rhode Island municipalities were collected by the banks or mortgage companies in advance, held in escrow and then paid in one lump sum to the appropriate municipality when the first quarter taxes were due to that municipality. At no time did any plaintiff elect to have his mortgage company pay his property taxes in a lump sum. During this same time period, those homeowners who paid their taxes directly, that is, without using a mortgage company or escrow agent, were allowed, at their election, to pay their municipal property taxes in quarterly installments. Rhode Island General Laws § 44–5–7 (1992)(amended 1999) required that municipalities permit taxpayers to pay their property taxes in quarterly installments. The Municipal Defendants argue that this provision did not apply to third parties such as banks who escrowed and paid the property taxes for their mortgage customers. Rhode Island General Laws § 44–5–7 has since been amended and expressly provides that the option to pay in quarterly installments extends to third parties such as banks and escrow agents. *Id.* § 44–5–7(a)(i)(ii). It should be noted that the Rhode Island General Assembly amended § 44–5–7 after this litigation was filed and included in the amended statute language which states that anyone who had previously concluded that the option to pay in quarterly installments did not extend to third parties is deemed to have complied with applicable law. *Id.* § 44–5–7(b).

Defendant Transamerica is a corporation organized and existing under the laws of Delaware, with its principal place of business in California. Transamerica Real Estate Tax Service ("Trets") is a division of Transamerica. Trets' customers are primarily banks, mortgage companies and lending institutions. The services Trets provides to its clients include the monitoring and processing of municipal bills for property taxes on mortgaged properties and confirming that payment was made from escrowed funds held on behalf of homeowners. Trets performed these services in 1994 and 1995 when the incidents prompting this suit began and continues to perform these services today. As of 1995, Trets performed these services in connection with approximately 50,000 mortgages throughout the State of Rhode Island.

In 1994, the U.S. Department of Housing and Urban Development ("HUD") amended Regulation X, codified at 24 C.F.R. § 3500.1–.21 (1997), pursuant to RESPA. The amendment became effective in May 1995. This amendment required that escrow agents, banks, and lending institutions pay municipal taxes on the properties for which they held escrow accounts in the manner most favorable to the taxpayer. Accordingly, if a municipality permitted the quarterly payment of property taxes and did not provide a discount for a lump sum payment, the lending institution was now obligated to make quarterly payments. 24 C.F.R. § 3500.17(k)(3). Trets recognized that this amended provision could alter the manner in which its customers collected and paid

their borrowers' municipal property taxes. In addition, RESPA limited the amount of money a bank could require a homeowner to keep in his escrow account. 12 U.S.C. § 2609. Lenders were now required to return any money that had been "overescrowed," that is any amount that exceeded the limit prescribed by § 2609. After the amended Regulation X was published, many lending institutions, anticipating that quarterly payments would be required, promptly returned any "overescrowed" funds to homeowners. Some plaintiffs received such a refund. Although the amended Regulation X triggered the events that have culminated in this litigation, neither Regulation X nor RESPA has any bearing on the outcome of this case. Plaintiffs only federal cause of action is their claim under § 1983, and that is the sole federal statute with which this Court must concern itself.

In February 1995, defendant Mark Williams ("Williams") ordered defendant James P. Houghton ("Houghton") to visit all Rhode Island tax collectors, except the tax collector for New Shoreham (Block Island), and determine the position of each on the payment of property taxes by third party lenders, so that Trets could inform its customer banks how to comply with the individual municipality's requirements. When he assigned this information gathering task to Houghton, Williams provided Houghton with a two-page summary of Regulation X, which Trets had obtained from the Mortgage Bankers Association. In the following weeks, Houghton visited nearly all of the municipal tax collectors in Rhode Island to discuss the amended Regulation X and disseminated the two-page synopsis to many of them.

Trets believed that the Rhode Island municipalities had the authority to decide whether to accept quarterly payments from third party lenders or require them to pay in an annual lump sum. During his meetings with the individual tax collectors, Houghton conveyed this belief and requested that any municipality which intended to require or continue requiring annual, rather than quarterly, tax payments from third party lenders furnish Trets with a letter to that effect for Trets' use in advising its customer banks. Otherwise, the banks would pay the taxes in quarterly installments as required by Regulation X. Nearly all of Rhode Island's tax collectors (33 out of 39) decided to require lump sum payments and provided Trets with written notification to that effect.

The decision to require third party agents to pay property taxes in annual lump sums benefited Trets, its customers, and the Rhode Island municipalities. Trets and its customer banks profited by avoiding the increased administrative burden that would accompany quarterly payments; and the municipalities, although not collecting any more money in taxes, benefited from the timing of these lump sum payments. Receiving these lump sums in the first quarter enabled the municipalities to maintain their debt structure and profit from the interest that accumulated on these payments during the remainder of the year. App. to the Transamerica Defs.' Statement of Material Undisputed Facts, section I at 13 (Dep. of Def. Frank Juchnik); *id.* section K at 6 (Dep. of Def. Joel Johnson); *id.* section L at 14–15, 22 (Dep. of Def. Claudette Paine). If the banks and escrow agents had paid the taxes in quarterly installments, many municipalities would have been forced to restructure their debt obligations and every municipality would have lost the interest that accumulated on these first quarter lump sum payments. *Id.* section I at 13 (Dep. of Def. Frank Juchnik); *id.* section K at 6 (Dep. of Def. Joel Johnson); *id.* section L at 14–15, 22 (Dep. of Def. Claudette Paine).

Before adopting the lump sum payment policy and sending the requested letter to Trets, some tax collectors consulted other officials within their municipality (including some city solicitors), some consulted tax officials from other Rhode Island municipalities, and some made the decision on

their own. Regardless of the decision making process employed, all the municipalities sent nearly identical letters. Some thirty-three letters, signed by Rhode Island tax collectors, were included in the record, all of them similar. Doc.App. to Pls.' Sixth Am. Compl. at 6–38. Nearly every letter proclaimed that the option to make quarterly tax payments extended only to homeowners paying their own taxes and not to third parties such as escrow agents. The exact origin of this form, however, is unclear. Although Trets did not author any of the letters, Houghton provided copies of letters written by tax collectors who had already elected to require annual payments from third party lenders to those other tax collectors who had not yet decided how to address the situation. The striking similarity of the letters suggests that many of the tax collectors simply adopted the language of the earlier letters and merely substituted their own municipality's name.

Plaintiffs allege that the Municipal Defendants, and by way of conspiracy, the Transamerica Defendants, violated plaintiffs' constitutional rights to due process and equal protection by requiring plaintiffs' banks or escrow agents to pay their taxes in a lump sum, while permitting those homeowners who paid their own taxes directly to pay in quarterly installments. Plaintiffs claim that under R.I. Gen. Laws § 44–5–7 they too should have been permitted to pay their taxes in quarterly installments in any Rhode Island municipality which provided that option. Subsequently they brought suit under § 1983 for these perceived violations of their constitutional and statutory rights. This Court will address first plaintiffs' allegations against the Municipal Defendants and then plaintiffs' allegations against the Transamerica Defendants.

II. This Court Lacks Subject Matter Jurisdiction over Plaintiffs' Allegations Against the Municipal Defendants.

▮ This Court cannot address the merits of plaintiffs' claims against the Municipal Defendants because the TIA and the principle of comity dictate that this Court lacks subject matter jurisdiction over this aspect of this case. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 105, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Lawyer v. Hilton Head Pub. Serv. Dist. No. 1*, 220 F.3d 298, 306 (4th Cir.2000); *Kerns v. Dukes*, 153 F.3d 96, 101 (3d Cir.1998). Federal courts are courts of limited jurisdiction, and can only act within the bounds of that jurisdiction. *Cumberland Farms, Inc. v. Tax Assessor*, 116 F.3d 943, 945 (1st Cir.1997); *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 628 n. 6 (1st Cir.1995). The TIA states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "[T]he TIA's commands are jurisdictional in nature and are not subject to waiver." *Cumberland Farms*, 116 F.3d at 945. Moreover, it is well-established that the TIA applies to taxes imposed by municipalities. *Ludwin v. City of Cambridge*, 592 F.2d 606, 608–09 (1st Cir.1979); *Folio v. City of Clarksburg*, 134 F.3d 1211, 1214 (4th Cir.1998); *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 n. 6 (5th Cir. 1998).

▮ The TIA was founded on a policy of restraint. Federal courts, subject to limited exceptions, should not interfere with a State's tax policies in light of "the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976). The TIA is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). Although not explicit on the face of its text, the TIA extensively restrains the jurisdiction of

federal courts over matters relating to state taxes-prohibiting federal courts from granting injunctions and issuing declaratory judgments in cases challenging state taxes. *California v. Grace Brethren Church*, 457 U.S. 393, 408–09, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). The only exceptions to the TIA are that a federal court may intervene in local tax issues if state law fails to provide a "plain, speedy and efficient" remedy that permits a taxpayer to have a full hearing on his or her constitutional claims, *Grace Brethren*, 457 U.S. at 411, 102 S.Ct. 2498, or "the United States sues to protect itself or its instrumentalities from state taxation." *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 823–24, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997).

■ The TIA "reflect[s] the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." *Fair Assessment*, 454 U.S. at 103, 102 S.Ct. 177. Comity has been defined as:

a proper respect for state functions ... and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.... [T]he concept [represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Fair Assessment*, 454 U.S. at 112, 102 S.Ct. 177 (quoting *Younger v. Harris*, 401 U.S. 37, 44–45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971))(alterations in original). As the TIA's application is not limited to those actions enumerated in its text, the principle of comity, which predates the TIA, is not limited by the TIA. *Fair Assessment*, 454 U.S. at 110, 102 S.Ct. 177. The principle of comity prohibits federal courts from granting relief in actions for damages brought under § 1983 that challenge a state or municipal tax scheme. *Id.* at 107, 102 S.Ct. 177. Because plaintiffs' § 1983 action for injunctive relief runs afoul of the TIA and plaintiffs' plea for damages is barred by comity, this Court must dismiss plaintiffs' suit against the Municipal Defendants.

A. The TIA Bars Federal Court Jurisdiction over an Action Requesting an Injunction or Declaratory Judgment in a Case Involving State Taxes.

■ Two requirements must be met before the TIA applies and bars a federal district court from exercising jurisdiction over a case. *Cumberland Farms*, 116 F.3d at 945. First, the litigation must involve a challenge to a state or municipal tax or tax policy. *Id.* Second, the state courts must provide a "plain, speedy and efficient" procedural remedy in which the plaintiffs are allowed to have all of their constitutional claims heard. *Grace Brethren*, 457 U.S. at 411–12, 102 S.Ct. 2498; *Cumberland Farms*, 116 F.3d at 945; *Keating v. Rhode Island*, 785 F.Supp. 1094, 1097 (D.R.I.1992); *Sterling Shoe Co. v. Norberg*, 411 F.Supp. 128, 132–33 (D.R.I.1976). The TIA guarantees only the existence of a procedural avenue through which plaintiffs can receive a full hearing on their claims; it does not guarantee that the substantive relief sought by plaintiffs will be certain or even likely in the state system. *Grace Brethren*, 457 U.S. at 411–12, 102 S.Ct. 2498.

■ Plaintiffs contend that the first prong of the TIA test is not met in this instance. They state that they are challenging not the property tax itself, but the Municipal Defendants' improper conduct. Plaintiffs submit that they are not challenging the method of the tax assessment, the amount of the assessment, or the lawful obligation to pay the assessment. Pls.' Sixth Am. Compl. at 9. Instead, they claim

that in requiring the plaintiffs to pay their taxes in an annual lump sum, the Municipal Defendants violated plaintiffs' constitutional and statutory rights. Further, plaintiffs state that they are not challenging R.I. Gen. Laws § 44–5–7, but seeking the protection offered by that law from defendants' unconstitutional behavior. Plaintiffs thus conclude that because they have structured their challenge in this manner, the TIA does not bar their suit.

In this case, however, the first prong of the TIA is easily met. Despite their fervent protestations to the contrary, plaintiffs are challenging the constitutionality of a local tax system. In fact, plaintiffs are challenging the constitutionality of the timing of the collection of property taxes in nearly every Rhode Island municipality. Further, plaintiffs' assertion that they are merely seeking the protection of R.I. Gen. Laws § 44–5–7 is flawed in that it assumes that plaintiffs' interpretation of that state statute is correct-a conclusion that is far from evident. What is clear, however, is that the first prong of the TIA is met in this case because plaintiffs *are* challenging the tax collection policies of nearly every municipality in Rhode Island.

The second prong of the TIA test is likewise easily met in that this Court has previously held that Rhode Island provides a "plain, speedy and efficient remedy" for taxpayers seeking to challenge the collection of their taxes. *Keating,* 785 F.Supp. at 1097; *Sterling Shoe,* 411 F.Supp. at 132–33. Although plaintiffs blithely allege that no such "plain, speedy and efficient remedy" exists in the Rhode Island state courts, this Court cannot seriously entertain that assertion.[1] Plaintiffs not only neglect to attempt to distinguish the holdings in *Keating* and *Sterling Shoe* from the case at bar, but they fail to articulate a

single reason why state procedures are inadequate. Instead, they rely solely on their declaration that the remedy offered in the Rhode Island state courts is insufficient. Because that is simply not the case, this Court rejects plaintiffs' hollow assertions and concludes that Rhode Island provides a "plain, speedy and efficient" remedy for plaintiffs' claims, thereby satisfying the second prong of the TIA test.

Whatever the substantive merit of their allegations, plaintiffs' federal action for injunctive and declaratory relief cannot be sustained because the TIA bars this Court from exercising jurisdiction over this controversy. Plaintiffs fail to recognize that their prayer for injunctive relief is precisely the type of action that the TIA prohibits federal courts from hearing. In their own words, "plaintiffs seek the *protection* of the tax assessment and collection procedures of the property tax system as enacted by the [Rhode Island] legislature and an injunction against future interference with that system by the defendants." Pls.' Sixth Am. Compl. at 8–9. Regardless of whether plaintiffs' interpretation of state law is correct, they are requesting an injunction against the tax collection policies of nearly every Rhode Island municipality. The TIA prohibits this Court from exercising subject matter jurisdiction in such a case. *Grace Brethren,* 457 U.S. at 411–12, 102 S.Ct. 2498; 28 U.S.C. § 1341. Granting the relief sought by plaintiffs would require this Court to interpret R.I. Gen. Laws § 44–5–7 and evaluate whether the conduct of local tax officials in collecting municipal property taxes violated the Constitution and if so enjoin them from collecting taxes in that fashion. The Supreme Court has determined that federal courts cannot engage in such behavior unless there exists no "plain, speedy and effi-

---

1. It is unclear if plaintiffs' counsel even believes his assertion. In one section of their brief, plaintiffs write: "Rhode Island courts have repeatedly held that illegal and/or unconstitutional tax assessments entitle injured parties to rebates and that illegal tax schemes are void and that offended taxpayers entitled

to full refunds. [sic] ... Clearly, therefore, Rhode Island law provides a monetary remedy to taxpayers deprived of their rights under the state tax laws." Pls.' Mem. in Supp. of a Mot. For Partial Summ. J. on Count Two of Pls.' Sixth Am. Compl. at 4 (citing *Oster v. Tellier,* 544 A.2d 128, 132 (R.I.1988)).

cient" remedy available to plaintiffs under state law. *Grace Brethren*, 457 U.S. at 408, 102 S.Ct. 2498. This is true, even in cases arising under § 1983. *Fair Assessment*, 454 U.S. at 116, 102 S.Ct. 177.

Accordingly, the TIA applies and prevents this Court from exercising jurisdiction over plaintiffs request for declaratory and injunctive relief.

B. The Principle of Comity Bars This Court from Granting Plaintiffs Any Relief on Their Claim for Damages Under § 1983.

The principle of comity bars federal courts from granting relief in an action for damages brought under § 1983 which challenges the administration of state and local taxes. *Fair Assessment*, 454 U.S. at 107, 102 S.Ct. 177. Because the *Fair Assessment* Court premised its holding on comity, it did not "decide whether [the TIA], standing alone, would require such a result." *Id.*

In *Fair Assessment*, the Court determined that comity barred federal courts from granting relief in § 1983 challenges to the administration of state and local tax systems. *Id.* The *Fair Assessment* Court's decision "reconcile[d] two somewhat intermittent and conflicting lines of authority as to whether a damages action may be brought under 42 U.S.C. § 1983 to redress the allegedly unconstitutional administration of a state tax system." *Id.* at 101, 102 S.Ct. 177. The Court held that when these two lines of authority conflict, "the principle of comity controls." *Id.* at 105, 102 S.Ct. 177.

Comity curbs federal court interference in areas of fundamental importance to the states, such as levying and collecting taxes. "In *Fair Assessment* ... the principle of noninterference with state taxation led [the Court] to construe § 1983 narrowly. [It] held that § 1983 does not permit federal courts to award damages in state tax cases when state law provides an adequate remedy." *Nat'l Private Truck Council v. Oklahoma Tax Com'n*, 515 U.S. at 582,

589, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995)(evaluating the decision in *Fair Assessment*, 454 U.S. at 116, 102 S.Ct. 177). Plaintiffs will not recover damages in a § 1983 challenge to a state or local tax system unless a court first determines that the administration of that tax system violated the taxpayer's constitutional rights. *Fair Assessment*, 454 U.S. at 113, 102 S.Ct. 177. Such a decision would be "as intrusive as the equitable actions that are barred by principles of comity." *Id.* "Furthermore, the intrusiveness of such § 1983 actions would be exacerbated by the nonexhaustion doctrine [prescribed by] *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)." *Fair Assessment*, 454 U.S. at 113–14, 102 S.Ct. 177. Accordingly, the *Fair Assessment* Court held that:

despite the ready access to federal courts provided by *Monroe* and its progeny ... taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court.

*Id.* at 116, 102 S.Ct. 177 (citations omitted). Because there is no significant difference between the "plain, adequate, and complete" standard as articulated in *Fair Assessment* and the TIA's "plain, speedy and efficient" requirement, *Fair Assessment*, 454 U.S. at 116 n. 8, 102 S.Ct. 177, and, as discussed above, Rhode Island's procedures meet that standard, the principle of comity requires that this Court dismiss plaintiffs' § 1983 claim for damages.

C. The Jurisdictional Bar Raised by the TIA and the Principle of Comity Is Not Lowered Even Though the Complained of Tax Policy Is No Longer in Force.

■ The principle of comity still applies to bar a federal court from interfering with

a state or local tax system even though the aspect of that tax system that is being challenged has been discontinued. In this instance, the parties disagree whether R.I. Gen. Laws § 44–5–7 permitted third party lenders such as banks and escrow agents to pay their borrowers' municipal property taxes in quarterly installments. Since the institution of this suit, the Rhode Island legislature has amended § 44–5–7 to expressly provide that the option to pay in quarterly installments extends to third party lenders. *Id.* § 44–5–7(a)(i)(ii). However, that amendment does not affect this Court's jurisdiction over this controversy. The principle of comity dictates that as long as the state provides a "plain, adequate, and complete remedy" through which taxpayers may contest their taxes and have their constitutional claims heard, state courts should be the arbiters of state and local tax disputes. *Fair Assessment,* 454 U.S. at 116, 102 S.Ct. 177.

There is a well developed background presumption that federal law generally will not interfere with the administration of state taxes. *Nat'l Private Truck Council,* 515 U.S. 582, 588, 115 S.Ct. 2351. The policy against federal interference with state tax law is venerable and extensive. In 1870, the Supreme Court observed that "[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Dows v. City of Chicago,* 11 Wall. 108, 78 U.S. 108, 110, 20 L.Ed. 65 (1870). More recently, the Supreme Court has reaffirmed this long standing policy, concluding that in cases challenging state or municipal tax systems, comity bars a federal court from awarding damages under § 1983 when state law provides an adequate remedy. *Fair Assessment,* 454 U.S. at 116, 102 S.Ct. 177. In addition, the policy against federal interference in state tax issues is so strong that even state courts may not grant injunctive or declaratory relief under § 1983 when an

adequate remedy under state law exists. *Nat'l Private Truck Council,* 515 U.S. at 589, 115 S.Ct. 2351.

The notion of comity necessitates that this action be dismissed from federal court. In articulating the strong policy reasons that undergird the TIA, which are the same policies upon which comity is based, the Supreme Court has emphasized that federal courts should refrain from interfering with state taxes. The Court wrote:

The federal balance is well served when the several States define and elaborate their own laws through their own courts and administrative processes and without undue interference from the Federal Judiciary. The States' interest in the integrity of their own processes is of particular moment respecting questions of state taxation. . . . "That the power of taxation is one of vital importance; that it is retained by the States; that it is not abridged by the grant of a similar power to the government of the Union; that it is to be concurrently exercised by the two governments: are truths which have never been denied." *McCulloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 425, 4 L.Ed. 579 (1819). The power to tax is basic to the power of the State to exist.

*Arkansas v. Farm Credit Servs. of Cent. Ark.,* 520 U.S. 821, 826, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997). The principle of comity requires that states be permitted to administer their own tax systems free from federal interference as long as the states provide sufficient procedures through which taxpayers may challenge their taxes and have their constitutional claims heard. *Grace Brethren,* 457 U.S. at 411–12, 102 S.Ct. 2498.

The principle of comity remains applicable and prohibits this Court from exercising jurisdiction over this case even though a decision in this case might not affect the current manner of tax collection in Rhode Island. While interfering with a state's revenue collection may be the primary concern that counsels against federal court

interference in state tax issues, it is not the only concern. There is more to comity, particularly in cases involving § 1983 challenges to state taxes, than interfering with actual tax collection. As Justice Brennan noted in *Perez v. Ledesma*, 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971)(concurring in part and dissenting in part), in addition to disrupting the collection of taxes, federal courts should avoid interfering in state tax cases so that taxpayers do not "escape the ordinary procedural requirements imposed by state law" and because "federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts." *Id.; see also Fair Assessment*, 454 U.S. at 113–14, 102 S.Ct. 177 (concluding that federal interference with state taxes is inappropriate unless the state fails to provide sufficient process because otherwise "taxpayers . . . would be able to invoke federal judgments without first permitting the State to rectify any alleged impropriety."). Justice Brennan's sentiments are applicable to the case at bar. The critical issue in this controversy is whether third parties such as banks and escrow agents qualified as "persons" for purposes of R.I. Gen. Laws § 44–5–7 for the fiscal years 1995–1999. Whether any constitutional violation has been committed by the Municipal Defendants hinges on this issue of state law. Accordingly, the principle of comity mandates that plaintiffs seek the protection of their federal rights through state remedies, "provided of course that those remedies are plain, adequate, and complete." *Fair Assessment*, 454 U.S. at 116, 102 S.Ct. 177 (internal citations omitted).[2]

Rhode Island has a substantial interest in the integrity of its own processes, particularly those relating to its tax system. *See Farm Credit*, 520 U.S. 821, 826, 117 S.Ct. 1776. That interest is of no less import merely because the state law has been amended. Rather, the state legislature's decision to amend R.I. Gen. Laws § 44–5–7 to eliminate the complained of practice demonstrates Rhode Island's ability to administer its tax system without federal interference. State and local leaders are responsible for constructing and administering their own tax systems and, to the greatest extent possible, they should be free to perform this task without fear of federal interference. It would contradict the fundamental principle that federal courts should avoid interfering with state tax systems, if this Court concluded that solely because a tax plan has changed that states, municipalities, and their officials could be haled into federal court to explain their actions. Moreover, adopting such an intrusive rule would result in an untenable dichotomy, permitting federal judicial review when a state or municipality actively evaluated and adjusted its tax collection policies, but precluding federal judicial review when the same state or municipality merely retained its current tax system unexamined. Federal judicial interference under such circumstances could actually discourage state and municipal officials from actively administering their tax collection policies and procedures for fear of being made to answer for any changes in federal court. Moreover, such interference would be "contrary to '[t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts.'" *Fair Assessment*, 454 U.S. at 115–16, 102 S.Ct. 177 (quoting *Matthews v. Rodgers*, 284 U.S. 521, 525, 52 S.Ct. 217, 76 L.Ed. 447 (1932)). As long as the state provides sufficient process, the principle of comity, which lies at the foundation of our federal system, requires that a challenge to the timing of local property tax payments be heard in state court.

2. Of course, today's holding does not completely preclude federal court review of plaintiffs' claim. Any state court decision regarding whether the Municipal Defendants violated any of plaintiffs' federal rights may ultimately be reviewed by the United States Supreme Court. *Fair Assessment*, 454 U.S. at 116, 102 S.Ct. 177.

The policy against interference in state tax systems by federal courts is particularly applicable in this instance. A damage award to plaintiffs would have a disruptive effect on municipal budgets and if any of the municipalities affected were unable to pay the judgment awarded, under R.I. Gen. Laws § 45–15–7 (1999), it would be necessary for this Court to then "order the assessors of the town or city to assess upon the ratable property, and the collector to collect, a tax sufficient for the payment of the judgment, with all incidental costs and charges, and the expense of assessing and collecting the tax." *Id.* Therefore, a decision by this Court could intrude to an even greater extent on the autonomy and economic affairs of the Municipal Defendants. This potential consequence illustrates further why the principle of comity prohibits federal courts from interfering in state and local tax matters. In this case, since Rhode Island's process for contesting state and local taxes is more than sufficient, comity requires that this Court dismiss plaintiffs' § 1983 action against the Municipal Defendants.

This Court is not the first to hold that comity bars a challenge to a state tax practice no longer in force from being heard in federal court. Recently, the Fourth Circuit explicitly decided that the TIA and the principle of comity prohibit a federal district court from exercising subject matter jurisdiction over a state tax case, even though the underlying statute had been amended and the complained of behavior had ceased.[3] *Lawyer v. Hilton Head Pub. Serv. Dist. No. 1*, 220 F.3d 298 (4th Cir.2000). The fundamental principle of comity that underlies our federal system directs that as long as a "plain, adequate, and complete" remedy exists at state law,

a federal court should refrain from interfering in state or local tax issues. *Fair Assessment*, 454 U.S. at 116, 102 S.Ct. 177.

In *Lawyer*, the Fourth Circuit affirmed the district court's decision and dismissed a challenge to a former South Carolina tax practice for lack of subject matter jurisdiction due to the TIA and the principle of comity. *Id.* 220 F.3d at 299–300, aff'g *Campbell v. Hilton Head No. 1 Pub. Serv. Dist.*, 114 F.Supp.2d 482 (D.S.C.1999). In *Lawyer*, citizens who lived in the Hilton Head Public Service District No. 1 area were charged property taxes to pay for the water and sewer systems, even though they did not receive water or sewer service from the District. Prior to the filing of suit in *Lawyer*, the South Carolina Supreme Court had already decided that such an assessment by an appointed body, like the District, violated the South Carolina Constitution. *Lawyer*, 220 F.3d at 300 (citing *Weaver v. Recreation Dist.*, 328 S.C. 83, 492 S.E.2d 79 (1997)). Because the South Carolina Supreme Court concluded that its decision in *Weaver* would have an unduly disruptive effect on the financial operations of local government entities throughout South Carolina, it rendered a prospective ruling, giving the South Carolina General Assembly two years to implement a new financing system. *Lawyer*, 220 F.3d at 300. The South Carolina Supreme Court expressly permitted the unconstitutional taxing practices to continue during that two year period. *Id.* In 1998, the South Carolina General Assembly enacted legislation removing all discretionary taxing power from appointed bodies such as the District's governing board. *Id.*

---

3. In addition, the Fifth Circuit has implicitly decided that federal courts do not have subject matter jurisdiction over a state tax case, even though the underlying statute has been amended and the offending behavior has ceased. *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1009 n. 2 (5th Cir.1998), aff'g 10 F.Supp.2d 617 (S.D.Miss.1997)(Homebuilders Association

filed suit in federal district court in Mississippi in 1995. The municipal ordinance at issue in the case was repealed in 1996 and judgment was entered in the district court on March 31, 1997. The Fifth Circuit later affirmed the district court's holding that the TIA and the principle of comity prevented the district court from having subject matter jurisdiction over the controversy.).

On June 1, 1998 the appellants in *Lawyer* filed similar complaints in both federal and state court. The defendants removed to federal court where the cases were consolidated. In September 1999, the plaintiffs' Second Amended Complaint against the District and Beaufort County alleged three causes of action. One cause of action was a claim under § 1983 in which plaintiffs alleged that they were subject to an unconstitutional collection of real and personal property taxes, which deprived them of property without due process and violated their right to equal protection. Plaintiffs sought a refund, damages, injunctive relief and attorneys' fees. *Lawyer*, 220 F.3d at 301. Relying on the TIA and the principle of comity, the district court dismissed the federal action and remanded the state action to state court. *Lawyer*, 220 F.3d at 301. On appeal, the Fourth Circuit, relying on *Fair Assessment*, held that the principle of comity bars a federal court from examining, in the first instance, whether a state tax scheme violates the United States Constitution even after that practice has been held to violate the state's own constitution by the state supreme court. *Lawyer*, 220 F.3d at 304.

Our federal system ensures that subject to certain limitations states enjoy autonomy in governing their own affairs, including the power to tax. As long as the state provides a remedy through which a taxpayer may challenge the imposition and collection of taxes and have constitutional objections to those taxes heard, the controversy should be resolved within the state system. *Rosewell*, 450 U.S. at 512–13, 101 S.Ct. 1221. The basic policy behind the TIA, comity and the relevant case law is that state tax issues should be heard in a state court if that state provides a procedurally sufficient remedy to the aggrieved taxpayer. *Fair Assessment*, 454 U.S. at 116, 102 S.Ct. 177. Accordingly, plaintiffs' § 1983 claims for injunctive and declaratory relief and damages against the Municipal Defendants must be dismissed for lack of subject matter jurisdiction.

III. This Court Grants the Transamerica Defendants' Motion for Summary Judgment on All Counts.

A. Jurisdiction.

 Although this Court lacks jurisdiction over plaintiffs' claims against the Municipal Defendants, it has federal question jurisdiction over plaintiffs' § 1983 claim against the Transamerica Defendants pursuant to 28 U.S.C. § 1331 (1994). In addition, pursuant to 28 U.S.C. § 1367(a) (1994), this Court has supplemental jurisdiction over plaintiffs' state law claims against the Transamerica Defendants. At its discretion, a court may exercise supplemental jurisdiction over a plaintiff's state law claims even if it dismisses a plaintiff's federal claim. *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256–57 (1st Cir.1996). In deciding whether to exercise its supplemental jurisdiction, a court must evaluate each case on its own facts. *Id.* at 257. In this instance, all of plaintiffs' claims arise from the same nucleus of operative fact, plaintiffs have already filed six amended complaints, discovery has closed, and the summary judgment record is complete. Accordingly, this Court concludes that exercising supplemental jurisdiction furthers the interests of judicial economy and fairness and is appropriate in this case. *See id.; see also Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995).

B. Summary Judgment Standard.

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is appropriate when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment the Court must view the facts on the record and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). When ruling on cross motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn. *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir. 1996). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *Id.*

C. Plaintiffs' § 1983 Claim.

▇▇▇▇ Plaintiffs argue that the Transamerica Defendants engaged in a conspiracy with the Municipal Defendants to deprive plaintiffs of their due process rights under the Fourteenth Amendment in violation of § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* Therefore, to be liable the Transamerica Defendants must have engaged in "state action" and deprived plaintiffs of some constitutional or statutory right. *Nat'l Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 181–82, 182 n. 4, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)(equating the Fourteenth Amendment's "state action" requirement with § 1983's "under color of law" requirement); *Alexis v. McDonald's,* 67 F.3d 341, 351 (1st

Cir.1995)(citing *Casa Marie, Inc. v. Superior Court of P.R.,* 988 F.2d 252, 258 (1st Cir.1993)). Generally, private parties such as the Transamerica Defendants are beyond the purview of the Fourteenth Amendment and § 1983. *Tarkanian,* 488 U.S. at 179, 191, 109 S.Ct. 454 (citing *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). However, a private party engages in state action and may be liable under § 1983 if that party conspires with a state actor to deprive a plaintiff of his constitutional rights. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Alexis,* 67 F.3d at 351; *Casa Marie,* 988 F.2d at 258–59. Plaintiffs allege that such a conspiracy existed in this instance. But plaintiffs' counsel paints with too broad a brush and too little paint. His bald allegations that the Transamerica Defendants conspired with the Municipal defendants are not supported by the evidence in this record.

Instead, it is clear from the record that the Transamerica emissary did not enter into any agreement with the various tax collectors to deprive plaintiffs of any clearly established constitutional or statutory rights. The tax collectors in the thirty-three municipalities sued made their own decisions (with or without help from other municipal officials) as to how to interpret the Rhode Island statute. It is also interesting to note that their view of the law was ratified by the Rhode Island General Assembly and the law was changed prospectively only. R.I. Gen. Laws § 44–5–7. In short, based on the facts developed in this case, there is no way that plaintiffs could recover damages against the Transamerica Defendants under § 1983. Accordingly, this Court grants the Transamerica Defendants' motion for summary judgment as to plaintiffs' claim under § 1983.

D. Plaintiffs' State Constitutional Rights Claim.

Plaintiffs have also alleged that the Transamerica Defendants violated plain-

tiffs' rights under Article 1, Section 2 of the Rhode Island Constitution. But, again plaintiffs' claim fails because the Transamerica Defendants did not engage in state action.

■ The Fourteenth Amendment does not protect citizens against private conduct. *See Perkins v. Londonderry Basketball Club,* 196 F.3d 13, 18 (1st Cir.1999). The equal protection language used in Article 1, Section 2 parallels the language used in the Fourteenth Amendment to the United States Constitution. *Jones v. Rhode Island,* 724 F.Supp. 25, 34–35 (D.R.I.1989). And like the Fourteenth Amendment, Article 1, Section 2 of the Rhode Island Constitution protects citizens only from state action that infringes on their rights, not from private conduct. *Id.* at 35. As this Court concluded above, the Transamerica Defendants did not engage in state action. Consequently, this Court grants the Transamerica Defendants' motion for summary judgment on plaintiffs' claim under Article 1, Section 2 of the Rhode Island Constitution.

E. Plaintiffs' Claim for Tortious Interference with Contractual Relations.

■ This Court grants the Transamerica Defendants' motion for summary judgement on plaintiffs' claim for tortious interference with contractual relations. Under Rhode Island law, four elements comprise the tort of intentional interference with contractual relations: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional interference with that contract; and (4) damages resulting from that interference. *Belliveau Bldg. Corp. v. O'Coin,* 763 A.2d 622, 627 (R.I.2000); *Jolicoeur Furniture Co. v. Baldelli,* 653 A.2d 740, 752 (R.I.1995). To establish a prima facie case of tortious interference with contractual relations, a plaintiff must allege and prove not only these four elements, but also that the defendant acted "without the benefit of any legally recognized privilege or other justification." *Belliveau,* 763

A.2d at 627. If the plaintiff successfully establishes a prima facie case, the burden then shifts to the defendant to prove that his interference was justified. *Id.* In this case, however, plaintiffs fail to provide any facts on which this Court could conclude that the Transamerica Defendants intentionally interfered with plaintiffs' contracts with their lending banks. Therefore, this Court grants summary judgment for the Transamerica Defendants.

Plaintiffs argue that the Transamerica Defendants tortiously interfered with their contractual relations by informing the Municipal Defendants that Rhode Island municipalities could require lump sum property tax payments from third party lenders. Plaintiffs, however, fail to include any of their contracts in the record. Instead, they rely on generic language drawn from sources such as "the standard Rhode Island Fannie Mae/Freddie Mac mortgage," which plaintiffs aver is substantially the same as the language contained in their individual mortgage contracts. Pls.' Mem. in Supp. of a Mot. for Partial Summ. J. on Count Three of the Sixth Am. Compl. at 5. The language quoted by plaintiffs requires that banks adhere to applicable law when escrowing mortgage payments and refund any excess amounts they may collect. *Id.* Plaintiffs assert that the Transamerica Defendants tortiously interfered with this contractual language when they encouraged the Municipal Defendants to require lump sum property tax payments from third party lenders. But plaintiffs fail to provide any factual support for these assertions and, consequently, their claim for tortious interference fails as a matter of law.

The facts before the Court are undisputed. The Transamerica Defendants informed the Municipal Defendants of the impending changes in the federal regulations and articulated their belief that the municipalities, under Rhode Island law, could require third party lenders to pay their borrowers' property taxes in lump sums. The Transamerica Defendants then

requested that any municipality which adopted a lump sum payment policy furnish Transamerica with a letter to that effect so that it could advise its client banks. Some thirty-three municipalities adopted the policy and sent the requested letter. As a result, plaintiffs' lenders paid plaintiffs' property taxes in lump sums. These facts, without more, do not amount to tortious interference by the Transamerica Defendants.

■ Based on these facts, no jury could reasonably conclude that the Transamerica Defendants intentionally interfered with the contract between plaintiffs and their lenders. Although tortious interference does not require that a party breach its contract, *New England Multi–Unit Hous. Laundry Ass'n v. R.I. Hous. & Mortgage Fin. Corp.*, 893 F.Supp. 1180, 1192 (D.R.I.1995); *Smith Dev. Corp. v. Bilow Enters., Inc.*, 112 R.I. 203, 308 A.2d 477, 482 (1973), it does require that the defendant substantially and intentionally interfere with a third party's performance and make that performance more difficult or less valuable. *Multi–Unit Hous.*, 893 F.Supp. at 1192; *Smith*, 308 A.2d at 482. Plaintiffs have not provided any facts from which this Court could conclude that the Transamerica Defendants interfered in any way with plaintiffs' contracts with their lenders. The generic contractual language submitted and relied on by plaintiffs requires that their lenders comply with applicable law when escrowing funds. Plaintiffs admit that the banks escrowed and paid plaintiffs' taxes in the manner required by the Rhode Island municipalities. Therefore, the banks complied with the terms of the contract. The only dispute then is whether the Rhode Island municipalities had the authority under Rhode Island law to require lump sum payments. While that conduct may affect the liability of the Municipal Defendants, it does not bear on the liability of the Transamerica Defendants. Because, as this Court has already concluded, plaintiffs have provided no evidence of any conspira-

cy between the Transamerica Defendants and the Municipal Defendants and the Transamerica Defendants did not make the banks' performance of their contractual obligations to plaintiffs either more difficult or less valuable, this Court grants summary judgment on this claim for the Transamerica Defendants.

**F. Plaintiffs' Claim Under the Rhode Island Civil Rights Act of 1990.**

■ In addition, plaintiffs allege that the Transamerica Defendants violated plaintiffs' rights under the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws § 42–112–1 to 42–112–2. Rhode Island General Laws § 42–112–1(a) provides:

> All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*Id.* Plaintiffs urge this Court to extend the protections of § 42–112–1(a) beyond those discrete groups identified in its text to include those Rhode Island property owners who were required to pay their property taxes through their lenders in a lump sum payment. Cleaving to the statute's "subject to like ... taxes" language, plaintiffs argue that § 42–112–1(a) applies to their case because they were required to pay their property taxes in a lump sum while other property owners were permitted to pay quarterly. But to extend the reach of this civil rights statute in the manner plaintiffs' suggest would ignore both the statute's purpose and history.

The Rhode Island Civil Rights Act of 1990 was intended to supplement its feder-

al counterpart, 42 U.S.C. § 1981 (1994). Congress enacted § 1981 during the period of reconstruction that followed the Civil War to remedy the rampant discrimination that was directed at former slaves and other minority groups. Over a century later, the United States Supreme Court narrowed the scope of § 1981, concluding that racial discrimination in the workplace, if unrelated to the formation of an employment contract, was not actionable under § 1981. *Patterson v. McLean Credit Union,* 491 U.S. 164, 171, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Ward v. City of Pawtucket Police Dep't,* 639 A.2d 1379 (R.I.1994), the Rhode Island Supreme Court concluded that the Rhode Island Civil Rights Act of 1990 was enacted as a direct response to the *Patterson* decision. *Ward,* 639 A.2d at 1381. Subsequently, this Court concluded in *Moran v. GTech Corp.,* 989 F.Supp. 84 (D.R.I.1997), that "the only substantive differences between R.I. Gen. Laws § 42–112–1 and 42 U.S.C. § 1981 are those needed to bridge the gap left by *Patterson.*" *Moran,* 989 F.Supp. at 91.

Against this historical backdrop, plaintiffs cannot sustain their claim against the Transamerica Defendants. The Rhode Island Civil Rights Act was designed to protect against discrimination on the basis of "race, color, religion, sex, disability, age, or country of ancestral origin," not to provide disgruntled taxpayers with an additional cause of action. § 42–112–1(a). Accordingly, this Court grants the Transamerica Defendants' motion for summary judgment on plaintiffs' claim under § 42–112–1(a).[4]

IV. Conclusion.

For the preceding reasons, this Court dismisses without prejudice plaintiffs' claims against the Municipal Defendants for want of subject matter jurisdiction be-

cause of the dictates of the TIA and the principle of comity. In addition, this Court grants the Transamerica Defendants' motion for summary judgment on all counts and, accordingly, denies plaintiffs' motion for summary judgment on those counts brought against the Transamerica Defendants. The Clerk shall enter judgment to that effect, forthwith.

It is so ordered.

---

4. Even if this Court concluded that plaintiffs fall within the ambit of § 42–112–1(a), plaintiffs' claim against the Transamerica Defendants would still fail. Plaintiffs' sole complaint under this statute is that they were required to pay their property taxes in a lump

sum, while other property owners were permitted to pay quarterly. Because the Transamerica Defendants had no power to affect when plaintiffs were required to pay their taxes, they cannot be liable under any plausible construction of § 42–112–1(a).