**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

J. C. LAWYER; IRWIN W. CAMPBELL;
BACKUS FERGUSON; THOMAS J.
HANAHAN, III, on behalf of
themselves and all others similarly
situated,

Plaintiffs-Appellants,

v.

HILTON HEAD PUBLIC SERVICE
DISTRICT NO. 1; BEAUFORT COUNTY,
Defendants-Appellees.

No. 99-2502

Appeal from the United States District Court
for the District of South Carolina, at Greenwood.
Patrick Michael Duffy, District Judge.
(CA-98-1572-9-23, CA-98-2972-9-23)

Argued: May 1, 2000

Decided: July 21, 2000

Before MURNAGHAN, WILKINS, and WILLIAMS,
Circuit Judges.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Wilkins and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Arthur Camden Lewis, LEWIS, BABCOCK & HAW-
KINS, L.L.P., Columbia, South Carolina, for Appellants. Steve A.

Matthews, SINKLER & BOYD, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:** Mary G. Lewis, LEWIS, BABCOCK & HAWKINS, L.L.P., Columbia, South Carolina; Joel D. Bailey, THE BAILEY LAW FIRM, P.A., Beaufort, South Carolina, for Appellants. James L. Ward, Jr., SINKLER & BOYD, P.A., Columbia, South Carolina, for Appellee Hilton Head Service District; Stephen P. Hughes, HOWELL, GIBSON & HUGHES, P.A., Beaufort, South Carolina, for Appellee Beaufort County.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

The plaintiffs-appellants ("the appellants"), residents of Hilton Head, South Carolina, appeal from the district court's order dismissing and remanding their claims against Hilton Head No. 1 Public Service District ("the District") and Beaufort County, South Carolina for lack of subject matter jurisdiction. In the instant appeal, we must decide whether the Tax Injunction Act, 28 U.S.C.§ 1341, and the related comity doctrine preclude the district court from exercising jurisdiction over the appellants' claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Takings Clause of the Fifth Amendment to the United States Constitution, as applied to the states via the Fourteenth Amendment. Because we agree with the district court that the Tax Injunction Act and the comity doctrine preclude the district court from exercising jurisdiction over the appellants' claims, we affirm.

I.

The relevant facts, which are virtually undisputed, are largely taken from the district court's opinion. In 1969, the South Carolina General Assembly created the Hilton Head No. 1 Public Service District as a special purpose district, governed by a five-member appointed Commission, to supply water and sewer services to residents and entities located on the northern portion of Hilton Head Island. Since its creation, the District has acquired the assets and facilities of various other smaller utility systems located within its areas of operation. By 1995, the District served nearly 12,000 customers, most of whom

2

consisted of commercial establishments, multi-family residential units, and residents of large planned communities or plantations.

Residential customers in the District are charged a base rate for water and sewer services, and an additional sum based upon actual consumption. Historically, the District also charged property taxes to residents within the District's service area based on the assessed value of all real and personal property in the District. Some of the residents in the District's service area, including the appellants, are charged the property taxes even though the District does not provide them with water or sewer service.

In Weaver v. Recreation Dist., 328 S.C. 83, 492 S.E.2d 79 (1997), the South Carolina Supreme Court held that such an assessment by the District, an appointed body, violated the provision of the South Carolina Constitution forbidding taxation by unelected officials. The court, however, stated that it was aware "of the disruptive effect today's holding could have on the financial operation of numerous special purpose districts, local commissions and boards throughout this state." Id. at 82. The court therefore made its ruling prospective, giving the General Assembly two years to devise a new financing system, and permitted the unconstitutional procedure to continue for that period. The court did not order any remedy or refund for taxes imposed in earlier years, including the year that was specifically challenged.

In 1998, the South Carolina General Assembly passed legislation that took all discretionary taxing power out of the hands of appointed bodies such as the District's governing board. See S.C. Code Ann. § 6-11-271. In its place, the General Assembly exercises its own taxing power to finance the operations of such entities. The District no longer imposes any taxes for operating and administrative purposes.

On June 1, 1998, the appellants filed two similar Complaints, one in South Carolina state court and one in federal district court, against the District, Beaufort County, and various current and former employees and members of the District's governing board. In September 1998, the appellants filed Amended Complaints in both actions. The Amended Complaints contained identical captions and were virtually identical in their underlying factual allegations. The allegations

3

addressed the various mechanisms by which the District raised funds to finance its operating and capital needs--in particular: the property taxes described previously, availability fees, and developer contributions. The Amended Complaints alleged causes of action for a taking of property without due process; lack of statutory authority to impose such fees and charges; violation of the state constitutional prohibition against taxation without representation; racial discrimination; fraud; self-dealing and unjust enrichment; and other matters.

On October 7, 1998, the defendants removed the state action to federal court. On January 6, 1999, Judge Blatt consolidated the state action and the federal action.[1] Following a hearing on class certification on June 17, 1999, Judge Blatt recused himself and the cases were reassigned to Judge Duffy.

The appellants filed a Second Amended Complaint on September 10, 1999. The Second Amended Complaint did not include allegations against the individual defendants, leaving the District and Beaufort County as the only defendants. In addition, the Second Amended Complaint reduced the class of plaintiffs to only those persons who reside or own property within the District and have been charged or have paid real or personal property taxes, but who have received neither water nor sewer service from the District. Finally, the Second Amended Complaint alleges only three causes of action: (1) a violation of 42 U.S.C. § 1983 because of the deprivation of property without due process and the deprivation of equal protection arising from the allegedly unauthorized collections of real and personal property taxes; (2) a violation of 42 U.S.C. § 1985 because of a conspiracy to effectuate the allegedly unauthorized collection of taxes, and thereby to deprive the appellants of equal protection and protected privileges and immunities; and (3) an unlawful taking of property by the allegedly unauthorized collection of taxes, in violation of the state and United States Constitutions. The appellants dismissed their other

_____

[1] According to the district court, while Judge Blatt's consolidation order "appeared to completely merge the state action into the federal action, technically it consolidated the two cases for filing purposes only. Therefore, the two cases remain open and independent actions." J.A. 299. The cases are consolidated for purposes of the instant appeal, however.

4

claims. The Second Amended Complaint seeks a refund, damages, injunctive relief, and attorneys' fees.

On August 19, 1999, the district court issued an order to show cause for why the court should not dismiss the federal case and remand the state case to state court under the Tax Injunction Act and the comity doctrine. On October 6, 1999, after briefing by the parties, the district court issued an order dismissing the federal action and remanding the state action to state court. The appellants now appeal to this court, arguing that the district court erred in dismissing and remanding the cases under the Tax Injunction Act and the comity doctrine.

II.

In 1937, Congress passed the Tax Injunction Act, which provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Supreme Court has recognized that the Act "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." Rosewell v. Lasalle National Bank, 450 U.S. 503, 522 (1981) (quoting Tully v. Griffith, Inc., 429 U.S. 68, 73 (1976)). The Act thus reflects the importance of the taxing power to the operation of state governments and Congress's desire to keep federal courts from unduly interfering with state revenue collection. See Collins Holding Corp. v. Jasper County, 123 F.3d 797, 799 (4th Cir. 1997); see also National Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582, 586 (1995) ("It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.") (quoting Dows v. Chicago, 78 U.S. (11 Wall.) 108, 110 (1871)).

On its face, the Act bars suits in federal court for injunctive relief in state tax cases. See 28 U.S.C. § 1341. Although not obvious from the face of the statute, the Act also bars suits for declaratory relief in state tax cases, see California v. Grace Brethren Church, 457 U.S.

5

393, 408 (1982), as well as suits for a refund of state taxes. See Home Builders Ass'n of Mississippi v. City of Madison, 143 F.3d 1006, 1010 n.6 (5th Cir. 1998); see also National Private Truck Council, 515 U.S. 582.

In Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100 (1981), the Supreme Court considered whether a federal court has jurisdiction to hear an action for damages under§ 1983 challenging the validity of a state tax. The Court refused to decide whether the Tax Injunction Act, standing alone, would bar such a suit; instead, the Court held that principles of comity barred federal courts from hearing such cases. See id. at 107. The Court reasoned that comity concerns had motivated Congress's passage of the Act, and that the comity principle survived the Act's enactment. See id. at 110 ("Neither the legislative history of the Act nor that of its precursor, 28 U.S.C. § 1342, suggests that Congress intended that federal-court deference in state tax matters be limited to the actions enumerated in those sections.").[2]

The Court then found that § 1983 damages actions in federal court "would be no less disruptive of [a state's] tax system than would the historic equitable efforts to enjoin the collection of taxes, efforts which were early held barred by principles of comity." Id. at 113. Section 1983 claims would be unduly disruptive of the administration of state taxes because "[p]etitioners will not recover damages under § 1983 unless a district court first determines that respondents' administration of the County tax system violated petitioners' constitutional rights. In effect, the district court must first enter a declaratory judgment like that barred in Great Lakes." Id.

The Court thus held that, based on principles of comity, a federal court cannot exercise jurisdiction over a claim for damages under § 1983 challenging a state tax so long as the state provides a remedy

_____

**2** The Court also noted that its decision in Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293 (1943), which relied on principles of comity in barring a claim for declaratory relief in a state tax case, established the post-Act vitality of the comity principle. See McNary, 454 U.S. at 110-11.

that is "plain, adequate, and complete."**3** Id. at 116. The Third Circuit has summarized the effect of the Tax Injunction Act and McNary on a federal court's ability to exercise jurisdiction in state tax cases:

> Taken together, the Tax Injunction Act and the Supreme Court's decision in McNary make it clear that a federal court cannot entertain a suit posing either an equitable or a legal challenge to state or local taxes ("any tax under state law") if a sufficient remedy (a remedy which the Tax Injunction Act terms "plain, speedy and efficient" and which comity views as "plain, adequate and complete") is available in state court.

Kerns v. Dukes, 153 F.3d 96, 101 (3d Cir. 1998) (footnote omitted).

A less-developed issue is whether a federal court has jurisdiction to hear an action for damages under § 1985 or the Takings Clause, challenging the validity of a state tax.**4** There is scant case law on

_____

**3** The Court also stated that "[w]e discern no significant difference, for purposes of the principles recognized in this case, between remedies which are `plain, adequate, and complete,' as that phrase has been used in articulating the doctrine of equitable restraint, and those which are `plain, speedy and efficient,' within the meaning of § 1341." McNary, 454 U.S. at 116 n.8.

**4** As noted in Section I, the appellants allege a claim for damages under the Takings Clause that is distinct from their § 1983 claim. Courts have struggled with the issue of whether plaintiffs can bring direct claims under the Takings Clause, or, instead, whether plaintiffs must use § 1983 as the mechanism for alleging a violation of the Takings Clause. In First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304 (1987), the Supreme Court stated that "it has been established at least since Jacobs v. United States, 290 U.S. 13 (1933), that claims for just compensation are grounded in the Constitution itself." Id. at 315. The Court also stated:

> The cases cited in the text, we think, refute the argument of the United States that "the Constitution does not, of its own force, furnish a basis for a court to award money damages against the government." Though arising in various factual and jurisdic-tional settings, these cases make clear that it is the Constitution

whether principles of comity bar such claims.**5** We can detect no difference of legal significance, however, between a claim for damages

_____

> that dictates the remedy for interference with property rights amounting to a taking.

Id. at 316 n.9 (citation omitted); see also Mann v. Haigh, 120 F.3d 34, 37 (4th Cir. 1997) (citing First English for the proposition that the Takings Clause is a "situation in which the Constitution itself authorizes suit against the federal government"). Other courts, however, have held, in apparent conflict with First English, that a violation of the Takings Clause can only be redressed through a claim under§ 1983. See, e.g., Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) (Azul II) (holding that a plaintiff alleging a violation of the Takings Clause "has no cause of action directly under the United States Constitution. We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983"); cf. Azul-Pacifico, Inc. v. City of Los Angeles, 948 F.2d 575, 586 (9th Cir. 1991) (Azul I) (withdrawn by Azul II) (holding that under the Takings Clause, "[t]he Constitution itself provides both the cause of action and the remedy"); see also Quality Refrigerated Servs., Inc. v. City of Spencer, 908 F. Supp. 1471, 1487 n.9 (N.D. Iowa 1995) (stating that dismissing the plaintiff's Takings Clause claim was proper because "[t]here is simply no direct cause of action arising under the Constitution itself against municipal officials for alleged constitutional violations"). We assume for purposes of this case that plaintiffs can bring direct claims under the Takings Clause.

**5** To our knowledge, the only published decision to address the application of the Act to a claim for damages under § 1985 is Northwood Apartments v. LaValley, 673 F.2d 159 (6th Cir. 1982). In Northwood Apartments, the court held, without explanation, that principles of comity precluded the district court from hearing a claim for damages under § 1985, challenging the validity of a state tax. See also Fiedler v. State of New York, 1998 WL 903637, at *4 (N.D.N.Y. Dec. 23, 1998) (relying on Northwood Apartments to find a lack of subject matter jurisdiction for a claim for damages under § 1985 challenging a state tax). In most § 1985 cases challenging the validity of a state tax, courts have preferred to dismiss the claim on alternative grounds--typically a plaintiff's failure to state a claim under § 1985. See, e.g., 423 South Salina St., Inc. v. City of Syracuse, 724 F.2d 26, 27-28 (2d Cir. 1983). In addition, as stated above, direct claims under the Takings Clause are uncommon, as most claims under the Takings Clause are alleged under§ 1983.

under § 1983 and a claim under § 1985 or the Takings Clause. Even a cursory reading of McNary reveals that while the holding in the case was § 1983-specific, the Court's reasoning was not. The Court refused to allow the taxpayers to bring their claim for damages under § 1983 in federal court because a federal constitutional inquiry would unduly disrupt the functioning of state taxing authorities.

Similarly, here, the appellants' § 1985 claim alleges a violation of § 1985(3) due to the appellees' conspiracy to deprive the appellants of "rights available to them under the Constitution and laws of the United States of America, including, inter alia , the equal protection of such laws and/or equal privileges and immunities under such laws." J.A. 245-46. And, of course, a claim under the Takings Clause also requires a showing that the District's tax system violates the appellants' constitutional rights. Thus, for the appellants to prevail on their claims under § 1985 and the Takings Clause, the district court must decide, in the first instance, that the District's administration of the property tax system violates the United States Constitution. Such an inquiry would have the same disruptive effect on state tax systems that prompted the Court's decision in McNary to preclude federal courts from hearing § 1983 claims challenging the validity of state tax systems. We therefore hold that appellants may not bring their claims for damages under § 1985 or the Takings Clause if South Carolina provides a plain, adequate, and complete remedy. **6**

_____

**6** Appellees also urge this court to affirm the dismissal of the appellants' claims under § 1985 and the Takings Clause under Rule 12(b)(6) for a failure to state a claim upon which relief can be granted. It may well be that the appellants have failed to allege race-based animosity, as required by § 1985. See United Brotherhood of Carpenters & Joiners of America v. Scott, 463 U.S. 825, 838 (1983). In addition, the legal basis for the appellants' claim for damages under the Takings Clause is not entirely clear. However, the district court sua sponte raised the issue of jurisdiction, and that was the only issue addressed by the district court in dismissing the appellants' claims. While we can affirm on any basis supported by the record, the appellees' failure to file a 12(b)(6) motion below leads us to conclude that we should not consider their arguments on that basis on appeal. We therefore limit our discussion to the jurisdictional issue considered by the district court.

III.

The appellants advance two arguments for why the Tax Injunction Act and principles of comity do not preclude the district court from exercising jurisdiction over their claims. First, the appellants argue that the district court has jurisdiction over their claims because the South Carolina Supreme Court already held that the District's tax scheme was unconstitutional in Weaver. Second, the appellants argue that the district court has jurisdiction over their claims because the appellants do not have a "plain, adequate, and complete" remedy in state court.

A.

The appellants argue that the South Carolina Supreme Court already found that the District's tax scheme was unconstitutional in Weaver and, therefore, the district court can exercise jurisdiction over their claims. The appellants base their theory on the notion that principles of comity are not implicated when a state court has already found a tax scheme unconstitutional, thereby lessening the disruptive effect of a federal court's intrusion into state tax matters.

The appellants' argument is without merit. As noted above, all of the appellants' claims require a finding by the district court that the District's conduct violated the United States Constitution. The court in Weaver, however, only found that South Carolina's tax scheme violated the South Carolina Constitution. See Weaver, 492 S.E.2d at 81-82 ("[I]nsofar as Act No. 317 permits such a delegation, it violates Article X, § 5 of the South Carolina Constitution and may not stand.") (emphasis added). Weaver does not contain a single reference to the United States Constitution.

Given that Weaver only dealt with the South Carolina Constitution, the appellants are asking this court to find, in the first instance, that a state tax scheme violates the United States Constitution. Because the Supreme Court's decision in McNary expressly bars such a finding by a federal court, the appellants' argument fails.

B.

The appellants next argue that the district court has jurisdiction over their claims because they do not have a "plain, adequate, and

10

complete" remedy in state court. The "plain, adequate, and complete" exception requires a state court remedy "that meets certain minimal procedural criteria." Folio v. City of Clarksburg, 134 F.3d 1211, 1214 (4th Cir. 1998) (quoting Rosewell, 450 U.S. at 512). The issue is whether the state remedy "provides the taxpayer with a `full hearing and judicial determination' at which [the taxpayer] may raise any and all constitutional objections to the tax." Id. (quoting Rosewell, 450 U.S. at 514).

The appellants do not challenge the district court's finding that South Carolina's procedures for challenging a state tax are adequate.**7** Instead, the appellants argue that they do not have a "plain, adequate, and complete" remedy in state court because of the South Carolina Supreme Court's decision in Weaver to award only prospective relief starting two years after its ruling. The appellants thus believe that they are unlikely to obtain the relief they desire in an action in state court.

South Carolina's remedy is not inadequate, within the meaning of the Tax Injunction Act and the comity doctrine, merely because the appellants probably will not obtain their desired relief in state court. Federal courts, including this circuit, have been unwilling to under-mine a state court's authority to deal with state tax issues based on an alleged substantive defect in a state court's remedy. See Folio, 134 F.3d at 1215 ("[A] real or perceived defect in the substantive remedy afforded a taxpayer under state law does not clothe the district court with jurisdiction to hear appellants' claims."). For example, in Folio, West Virginia taxpayers argued that declaratory relief under West Virginia law was not an "adequate" state remedy because state courts had refused to grant relief to similarly situated taxpayers. The court rejected the taxpayers' argument, finding that

_____

**7** South Carolina provides at least two avenues for challenging the validity of a state tax. First, the South Carolina Revenue Procedures Act allows taxpayers to appeal a proposed assessment to the South Carolina Department of Revenue, and then appeal the Department's decision to an Administrative Law Judge. See S.C. Code Ann.§§ 12-60-450 to -460. Second, South Carolina's Uniform Declaratory Judgments Act provides for constitutional challenges to state tax issues under both federal and state law. See id. §§ 15-53-10 to -140.

11

> [a]ppellants may be correct that, in light of <u>Bacon</u> or other West Virginia case law, they would meet with little success were they to seek a declaration in West Virginia state court that the ordinance runs afoul of the federal constitution. But, again, the Tax Injunction Act only guards against procedural defects, not substantive defects, and it does not allow appellants to invoke the jurisdiction of the federal courts merely because state precedent is unfriendly.

<u>Id.</u> at 1216 (citation omitted); <u>see also Strescon Indus., Inc. v. Cohen</u>, 664 F.2d 929, 931 (4th Cir. 1981) ("[A]n asserted <u>substantive</u> defect in the State remedy, even if found to exist, is an insufficient basis upon which Federal jurisdiction may be grounded."); <u>Colonial Pipeline Co. v. Collins</u>, 921 F.2d 1237, 1245 (11th Cir. 1991) ("[A] reviewing court should eschew any analysis of [state remedies'] substantive sufficiency so long as a complainant has some opportunity to raise his constitutional objections.").

The Fifth Circuit's decision in <u>Smith v. Travis County Education Dist.</u>, 968 F.2d 453 (5th Cir. 1992), is also instructive. The prelude to <u>Smith</u> began on January 30, 1992, when the Texas Supreme Court held in <u>Carrollton-Farmers Independent Sch. Dist. v. Edgewood Independent Sch. Dist.</u>, 826 S.W.2d 489 (Tex. 1992) (<u>Edgewood III</u>), that the Texas system for financing public education violated the Texas Constitution.[8] <u>See id.</u> at 514. To avoid disruption to the educational process, and to enable the State Legislature to consider all options fully, the Texas Supreme Court deferred the effect of its ruling for seventeen months. <u>See id.</u> at 522. The court also held that its ruling was not a defense to the payment of 1991 and 1992 taxes. <u>See id.</u>

Thereafter, in <u>Smith</u>, two groups of Texas taxpayers filed suit in federal court pursuant to § 1983, seeking a declaratory judgment that the imposition of the 1991 and 1992 public school taxes violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The taxpayers argued that they did not have a

_____

[8] The Texas Supreme Court had already invalidated earlier versions of the state's school finance system before its 1992 decision. <u>See Edgewood Independent Sch. Dist. v. Kirby</u>, 777 S.W.2d 391 (Tex. 1989); <u>Edgewood Independent Sch. Dist. v. Kirby</u>, 804 S.W.2d 491 (Tex. 1991).

12

"plain, speedy, and efficient" remedy in state court because the relief awarded by the Texas Supreme Court was inadequate. See Smith, 968 F.2d at 456. The Fifth Circuit described the taxpayers' argument as follows:

> The taxpayers do not allege that the state fails to furnish a procedural avenue for them to pursue their federal due process claim. Indeed, they initiated state court actions before bringing their claim in federal court. Rather, the taxpayers argue that because Edgewood III prevents them from using the Texas Supreme Court's ruling as a defense to the non-payment of taxes under the public school finance system, it appears unlikely that they will succeed on the merits of their federal claim in state court.

Id. The court held that the taxpayers' argument "provides no basis for circumventing the jurisdictional bar imposed by the Tax Injunction Act," because "[t]he taxpayers have not demonstrated that the state courts have refused to entertain their federal claim in their pending state court actions." Id.

The principles enunciated in Folio and Smith are fatal to the appellants' claims. The appellants are dissatisfied with the substantive remedy provided by the South Carolina Supreme Court in Weaver. The appellants' dissatisfaction with their (likely) substantive remedy does not clothe this court with jurisdiction to hear claims that we otherwise must dismiss under principles of comity. The appellants may pursue their claims in state court, where they will have an opportunity to raise any and all constitutional objections to the District's tax scheme. The appellants therefore have a plain, adequate, and complete remedy for their claims in state court.

IV.

In sum, we hold that, to the extent the appellants request injunctive relief or a refund of state taxes, the district court cannot exercise jurisdiction over those actions under the Tax Injunction Act. In addition, principles of comity preclude the district court from exercising jurisdiction over the appellants' claims for damages under § 1983, § 1985, and the Takings Clause. We therefore affirm the district court's order

13

dismissing the appellants' federal action and remanding the appellants' state action to state court.

AFFIRMED

14