**INDIAN CREEK MONUMENT SALES, et al., Plaintiffs,**

v.

**Bob ADKINS, et al., Defendants.**

**No. 2:03 CV 00114.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Feb. 12, 2004.

---

Timothy W. McAfee, McAfee Law Firm, P.C., Norton, VA, for Plaintiffs.

Henry S. Keuling–Stout, Keuling–Stout, P.C., Big Stone Gap, VA, for Defendants.

## OPINION

JONES, District Judge.

The plaintiffs, businesses located in Wise County, Virginia, seek in this § 1983 action a refund of payments made to the county government under an unconstitutional solid waste disposal fee. The issue before me is whether the principles of comity or the Tax Injunction Act, 28 U.S.C.A. § 1341 (West 1993), divest this court of subject matter jurisdiction. After consideration of the pertinent authority, I find this court should not accept jurisdiction of the case.

### I

This case is not the first in the legal contest between the Wise County Board of Supervisors and certain citizens of the county over modifications made in 2001 to a county ordinance levying fees for solid waste disposal. The modifications designed a new fee schedule for the use of solid waste disposal services by households and businesses in the county based on estimates of the volume of garbage deposited in the county's solid waste landfill. In response to an equal protection challenge to the scheme, the Supreme Court of Virginia held the ordinance unconstitutional on the ground that the classifications utilized to determine the amount of fee to be levied on a given household or business bore no reasonable relation to the county's objective of having the fees reflect the current costs of solid waste disposal in Wise County. *See Estes Funeral Home v. Adkins*, 266 Va. 297, 586 S.E.2d 162, 166–67 (2003).

Following this decision of Virginia's highest court, the plaintiffs filed the present suit pursuant to 42 U.S.C.A. § 1983 (West 2003) against the members of the county's governing body seeking recovery of the monies paid to the county for solid waste disposal services from the time of the ordinance's modification until the declaration of its unconstitutionality. Alleging that there are "hundreds of persons affected by the unconstitutional actions of the Wise County Board of Supervisors" (Compl.¶ 20.), the plaintiffs also seek class action certification. In response, the defendants have filed a Motion to Dismiss the case on the ground, among others, that this court lacks subject matter jurisdiction over the controversy due to the dictates of the federal Tax Injunction Act and principles of comity. The motion has been briefed and argued and is now ripe for decision.

### II

A party may challenge a federal court's jurisdiction over the subject matter of a controversy where there is a question as to whether the complaint factually alleges "a non-frivolous claim arising under federal law" over which the court has jurisdiction to evaluate the merits. *Baker v. Carr*, 369 U.S. 186, 199–200, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *see also* Fed.R.Civ.P. 12(b)(1).[1] Upon a challenge to subject

---

1. In their Motion to Dismiss, the defendants expressly referenced only Federal Rule of Civ-

matter jurisdiction, the plaintiff bears the burden of persuasion. All parties, however, may submit evidence outside the pleadings to substantiate their positions with regard to jurisdiction. *See Williams v. United States,* 50 F.3d 299, 304 (4th Cir. 1995). After considering the evidence, the court must grant the motion to dismiss if it determines that the relevant jurisdictional facts are undisputed and that the moving party's challenge is valid as a matter law. *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999). Where a motion to dismiss due to lack of subject matter jurisdiction is granted, it does not constitute an adjudication on the merits and leaves a plaintiff free to pursue her claim in a court which does have jurisdiction. *See Hitt v. Pasadena* 561 F.2d 606, 608 (5th Cir.1977).

### III

 Federal district courts are courts of limited jurisdiction and may not decide cases over which they have been divested of jurisdiction by Congress acting within its authority. *Bowman v. White,* 388 F.2d 756, 760 (4th Cir.1968). The Tax Injunction Act ("the Act") is one such instance of divestiture, providing that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C.A. § 1341. Rooted in equity practice and in the restraints of comity, the Act codifies the principles of comity regarding federal non-intervention in the fiscal matters of a state. By divesting federal courts of jurisdiction in cases predicated on state tax matters, the Act reflects Congress' regard for and

understanding of the importance of independent taxing power to state revenue collections and consequently to effective state operation and management. *See Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n,* 515 U.S. 582, 586, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); *Rosewell v. La-Salle Nat'l Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981); *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976).

Under the Act, a federal court may not exercise jurisdiction over any controversy that seeks to proscribe or constrain the imposition of a state tax if a "plain, speedy and efficient remedy" is available in state court. Thus, the key determinants are whether the remedy sought "enjoin[s], suspend[s] or restrain[s]" a state tax, whether the assessment challenged is a tax for purposes of the Act, and whether any available state remedy is "plain, speedy and efficient."

 By its very language, the Act clearly precludes actions in federal court for injunctive relief against any state tax, as long as the taxpayer has an adequate remedy in state court. In determining whether other types of actions fall within the ambit of the Act, the query focuses on whether the remedy sought under the action would be "disruptive" to the state tax system and would contradict Congress' purpose of minimizing federal interference with state taxation. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 112–13, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *see also Cal. v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). Informed by this

il Procedure 12(b)(6) (motion to dismiss for failure to state a claim upon which relief can be granted). However, the motion in its substance is clearly one for lack of subject matter jurisdiction, and the defendants have submitted evidence outside the pleadings. Therefore, the motion will be construed as one

under Rule 12(b)(1) (lack of jurisdiction over the subject matter) rather than under Rule 12(b)(6), for a court cannot determine whether a proper claim is stated if the court is not satisfied that it has jurisdiction. *See Crawford v. United States,* 796 F.2d 924, 928 (7th Cir. 1986).

guidance and Congress' ultimate goals, courts have held that the provision similarly restricts suits for declaratory relief, *id.* at 408, 102 S.Ct. 2498, suits for refunds of previous disbursements to challenged state taxes later held unconstitutional, *Bland v. McHann*, 463 F.2d 21, 25–27 (5th Cir. 1972), and suits seeking damages related to the imposition of unconstitutional taxes, *Smith v. N.Y. Dep't of Taxation & Fin.*, 79 Fed.Appx. 497, 498, 2003 WL 22513582 (2d Cir.2003).

■■■ Determination of whether a given assessment is a tax for purposes of the Act and thereby falls within its reach is dependent on federal law and is independent of any classifications used by the state to label the assessment, either in the language of the provision or in preceding adjudications. *See Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir.1998). As a preliminary matter, it is settled that the Act applies to both state and local taxes. *Collins Holding Corp. v. Jasper County, S.C.*, 123 F.3d 797, 799 (4th Cir. 1997). Federal law distinguishes between broader-based taxes designed to raise revenue and fees that are connected to some regulatory scheme. *Taxes* are customarily enacted by the legislature or governing body of the state or locality, contribute primarily to a general fund that collects the general revenue of the jurisdiction, and are spent for the general welfare of the entire community. By contrast, *fees* are ordinarily payments made in exchange for privileges or "government provided benefit[s]," correlate in amount to the degree of benefit received by the payor, and are directed to a special fund designed to serve a regulatory purpose. *United States v. City of Huntington*, 999 F.2d 71, 74 (4th Cir.1993); *see also Folio v. City of Clarksburg*, 134 F.3d at 1217. The Fourth Circuit has adopted a three-part test to focus this analysis that looks to (1) the entity that imposes the charge; (2) the population that is subject to the charge; and (3)

the purposes served by the use of the monies obtained by the charge. Generally, the term "tax" for purposes of the Act is given a broad application. In marginal cases, the third factor may be emphasized, with charges that benefit the general public qualifying as a tax, and charges benefitting narrower segments of the community being characterized as fees. *See Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 133–34 (4th Cir.2000).

■■■ The final query addresses whether the available state remedies are plain, speedy, and efficient. This criterion instructs that applicable state remedies must meet certain minimal procedural requirements. A state remedy, in order to be plain, speedy, and efficient, must provide the taxpayer "with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. at 514, 101 S.Ct. 1221 (internal citations omitted). The Act does not inquire into the substantive merits of the plaintiff's case and does not compel that the plaintiff be likely to succeed in securing relief pursuant to the state-offered remedy. A state remedy qualifies under the Act solely if it meets the procedural requisites providing a forum for the plaintiff's federal rights to be adjudicated. *Lawyer v. Hilton Head Pub. Serv. Dist. No. 1*, 220 F.3d 298, 305 (4th Cir.2000). Additionally, a state remedy is sufficiently "speedy" if the period of time it consumes is comparable to the time taken for similar litigation in the same or similar courts. *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. at 518–19, 101 S.Ct. 1221. Finally, the Act's interest in guaranteeing a plain, speedy, and efficient remedy in state court is to provide an effective forum for the taxpayer's federal claims to be heard. It does not require that the state remedy be the best one possible or even that it be

"equal to or better than the remedy which might be available in the federal courts." *Bland v. McHann,* 463 F.2d at 29.

 Even where federal courts are not statutorily restrained from exercising jurisdiction, they may be so restricted by reasons of sound policy. The traditional observance of comity and independence between· federal courts and state courts is one such instance. Recognizing the separateness and sovereignty of state governments, comity is rooted in the "belief that the [n]ational [g]overnment will fare best if the [s]tates and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The practice condones neither indiscriminate deference to a state nor centralized control over every issue of federal or national importance. Instead, comity envisions a system of due respect and "sensitivity to the legitimate interests" of both the federal government and the states. Comity is a judicially-created rule that counsels the federal courts to exercise their mandate to protect federal rights and federal interests, where possible and fitting, in a manner that does not impede upon the legitimate domains and activities of any state. *Id.*

 Congress has recognized and sanctioned the fundamental principles underlying the comity doctrine and has acted in many arenas to codify their dictates into statutory law. The Tax Injunction Act is one such codification of the comity doctrine and articulates the restraints it imposes upon federal judicial review of state and local taxes where a "plain, speedy and efficient remedy" can be had in a state court. As a forerunner of the Act, the comity doctrine is broader than the Act and may apply in situations in which the Act's applicability would normally be preempted, either by a constitutional provision or a conflicting federal law. Accord-

ingly, both the Supreme Court and the Fourth Circuit have clarified that the doctrine of comity is broad enough to apply even . under the wide sweep of § 1983. The Tax Injunction Act and its interpretation may inform the inquiry as to the permissibility of federal jurisdiction in § 1983 actions challenging state taxes but are not a determinative factor. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. at 116, 102 S.Ct. 177 (1981); *Lawyer v. Hilton Head Pub. Serv. Dist. No. 1,* 220 F.3d at 305. As a practical matter, because § 1983 does not bar the application of the comity doctrine, the principles of comity and of the Tax Injunction Act effectively roll into one in determining whether a federal court has jurisdiction over a § 1983 controversy involving state tax matters. *Id.* at 304–05.

### IV

The defendants, in their Motion to Dismiss, assert that the Tax Injunction Act and principles of comity bar this court from having jurisdiction over the plaintiffs' suit because their request for a refund is inextricably linked to the fiscal operations of the county. In light of the long-standing principles of federal non-interference and state and local independence in taxation matters, the defendants maintain that state court is the proper forum for this controversy. In response, the plaintiffs argue that the Act is inapplicable to this controversy because their action does not seek to "enjoin, suspend or restrain" any tax and because they do not have a "plain, speedy and efficient" remedy available to them in any Virginia state court. Specifically, the plaintiffs contend that the available state remedy is neither speedy nor efficient since class actions are not available under Virginia law, thereby forcing each independent household and business in Wise County to individually and separately pursue litigation in order to secure a

refund. For the same reasons, they also assert that comity does not require dismissal in this case.

■ The plaintiffs' arguments are not persuasive, and I find that the controversy at hand falls squarely within the bounds of the traditional restraints imposed by comity, informed in particular by the Tax Injunction Act, barring this court from exercising jurisdiction over it. An action to refund previously-paid taxes sufficiently interferes with a state's system of taxation and revenue collection as to invoke the principles of federal non-interference underlying both comity and the Act. Although the plaintiffs are correct in pointing out that the tax has already been declared unconstitutional and is no longer being collected, ascertaining the amount of refunds that would be due to the plaintiffs would, at a minimum, require the court to delve into the specifics of how the tax was levied, upon whom it was levied, the specific amounts in which it was levied, and whether particular parties had failed to pay it.

In the same vein, as Edward Sealover, the County Administrator of Wise County, has related in his Verification Under Oath, the sanitary landfill built in Wise County in conjunction with the assessment of the solid waste disposal fee was financed by a revenue bond issued by the Virginia Resources Authority ("the VRA"). Any disbursements made under the solid waste disposal fee to the county were used to repay the loan to the VRA and to meet the operational and maintenance expenses of the landfill. (Verif. Under Oath ¶ 2.) Because the landfill has not disappeared and the county's obligations associated with it have not terminated even though the fee has been deemed unconstitutional, reimbursement of these funds is intimately connected to the county's present and future fiscal operations. Thus, an action for refunds would be highly disruptive of the state's use of those funds and does not justify an exception to the applicability of comity or of the Act. See *Tomaiolo v. Mallinoff*, 281 F.3d 1, 8 (1st Cir.2002) (interpreting *Fair Assessment* to be applicable even to situations in which the unlawful tax is no longer levied because "the procedure by which a state taxpayer may obtain a refund of an allegedly illegally collected tax is no less a part of the smooth functioning of the state's tax system than the collection of the taxes in the first place"); *Patel v. City of San Bernardino*, 310 F.3d 1138, 1141 (9th Cir.2002) (declining jurisdiction because determination of the plaintiffs' injuries and corresponding damages resulting from an unconstitutional local tax would be too intrusive to "the smooth functioning of the city's tax system"); *Am. Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Mgmt. Dist.*, 166 F.3d 835, 840 (6th Cir.1999) (declining jurisdiction in a tax refund case because the "idea that a federal court ordering reimbursement of revenue raised under a repealed statute is any less invasive of a state's fiscal affairs than an order of reimbursement of revenue under a current statute is illogical").

The plaintiffs, in their responses to the defendants' Motion to Dismiss, attempt to distinguish their case for refunds from other cases in which the primary forms of relief requested were compensatory or punitive damages. This distinction is of no relevance because the crux of the inquiry goes to the possible disruption caused by the requested remedy upon the state or local fiscal system. It is clear in this case that refunds would be equally as disruptive to the county and state as may be any other kind of damages. See *Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 513 n. 16, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982).

■ The plaintiffs also have a plain, speedy, and efficient remedy available in state court.[2] Section 8.01–186 of the Virginia Code authorizes the plaintiffs to obtain further relief to supplement the declaratory judgment previously secured from the Supreme Court of Virginia. *See* Va.Code Ann. § 8.01–186 (Michie 2000). Thus, there appears no reason preventing the plaintiffs from seeking refunds in the Circuit Court of Wise County and having their claims heard fairly and comprehensively in that forum. The plaintiffs would there have normal appellate procedures available to them, with possible final review in the United States Supreme Court.

It is argued that because Virginia courts have no recognized class action procedure, any state remedy is inadequate, at least as to the putative class members, because each Wise Countian seeking a refund of fees paid would be required to file an individual action in state court. The plaintiffs contend that because of the relatively small amounts paid to date by individuals under the unconstitutional ordinance, the state court filing fee alone might exceed the amount of any individual refund sought, and thus practically inhibit many prospective plaintiffs in state court.[3]

■ It is true that Virginia has no statute or court rule generally permitting class actions, such as provided for in Federal Rule of Civil Procedure 23. However, borrowing from English chancery practice, Virginia has long recognized the ability of plaintiffs in equity to sue for themselves and others similarly situated. *Moore v. Nat'l Wildlife Fed'n,* Chancery No. 10884, 1987 WL 488717, at *1 (Va. Cir. Ct. Sept. 11, 1987). This doctrine of "parties by representation" applies in various types of cases in equity, including taxpayers' claims. Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure* § 5.18[D][2] (4th ed.2003) (quoting Edwin B. Meade, *Lile's Equity Pleading and Practice* § 77 (3d ed.1952)). I see no reason why a suit in equity for an injunction requiring a refund of all of the fees paid under the unconstitutional ordinance could not be filed on a representative basis in state court.[4]

The degree of possible disruptiveness that this action for refunds would foreseeably cause and the corresponding availability of a procedurally adequate remedy in state court are sufficient to interpose comity and declare that state courts are the proper forum for this controversy. However, in the interest of being comprehensive, I find that the present action also falls within the parameters of the Tax Injunction Act and thus bars jurisdiction in this court.

The fee at issue in this case is properly classified as a tax for purposes of the Act.

2. Traditionally, under comity, the requisite remedy available in state court must be "plain, adequate, and complete." However, it is settled that for purposes of the inquiry at hand, there is no significant difference between remedies that are "plain, adequate, and complete" and those that are "plain, speedy and efficient" within the meaning of the Act. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. at 116 n. 8, 102 S.Ct. 177; *Lawyer v. Hilton Head Pub. Serv. Dist. No. 1,* 220 F.3d at 302 n. 3.

3. The defendants represent that there are almost 16,000 individual households in Wise County. (Mot. to Dismiss, Ex. A.) The unconstitutional ordinance amendment adopted January 11, 2001, provided for an annual fee of $30 per household. (*Id.,* Ex. B.)

4. Of course, I express no opinion on whether relief should be granted in any such state court suit. For example, the Board of Supervisors contends that the decision of the Virginia Supreme Court should be given only prospective effect, thus relieving the county of any obligation to make refunds. Such an argument must be evaluated by the state courts.

The fee was imposed by the county's general governing body, the Wise County Board of Supervisors. It was levied upon essentially every household and business within Wise County because of the indispensable nature of solid waste disposal services and the lack of an alternative service provider. The funds collected as a result of the fee were used to finance, operate, and maintain a sanitary landfill for the community. The development and maintenance of landfills, particularly sanitary ones, are unquestionably within a state's police power, which is exercised for the public welfare and can be delegated to localities. *See Geo–Tech Reclamation Indus., Inc. v. Hamrick,* 886 F.2d 662, 665 (4th Cir.1989). Thus, the fee appears to be broad-based and designed to enhance the county's revenue and provision of general welfare services and is a tax for purposes of the Act. The Tax Injunction Act thereby also bars federal jurisdiction over this case.

### V

For the foregoing reasons, the defendants' Motion to Dismiss will be granted, and judgment will accordingly be entered.