**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-4140

———————

OLDE HOMESTEAD GOLF CLUB, INDIVIDUALLY
AND AS CLASS REPRESENTATIVE,
Appellant

v.

ELECTRONIC TRANSACTION SYSTEMS CORPORATION

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Civil No. 5-16-cv-03914)
District Judge:  Honorable Edward G. Smith

———————

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2017

Before: SMITH, *Chief Judge,* NYGAARD, and FUENTES, *Circuit Judges*

(Opinion Filed:  November 29, 2017)

———————

OPINION*

———————

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

NYGAARD, *Circuit Judge.*

The Olde Homestead Golf Club challenges the dismissal of its complaint on the basis of a forum selection clause. The Club sued the Electronic Transaction Systems Corporation, alleging that ETS over-billed the Club for its services. An agreement between the Club and ETS contained a forum selection clause identifying state court in Loudon County, Virginia as the forum for any and all disputes. The Club filed their lawsuit in the United States District Court for the Eastern District of Pennsylvania and, pursuant to the aforementioned forum selection clause, that Court dismissed the complaint. We will affirm.

## I.

We begin with a brief synopsis.[1] ETS processes electronic payments and provides other services to a wide array of merchants, including retail stores, restaurants, and golf courses around the country. The company is headquartered in Loudoun County, Virginia, and is incorporated within that Commonwealth. ETS clients are required to sign a Merchant Application and Agreement (MAA), a seven-page contract that governs the relationship between ETS and its clients. ETS and the Club executed a new MAA in March of 2007. The MAA contains a forum selection clause, stating that any litigation that arises between the parties will be brought in the state court in Loudoun County. Then, in December of 2007, ETS asked the Club to execute another MAA, which the

---

[1] Because we write primarily for the parties, we provide background only as relevant to the issues on appeal. Given the parties' fluency with their case, we will omit citations to the record, except where needed to provide particular emphasis.

Club did.  This newly executed contact contained the same forum selection clause as the one agreed-to in March, 2007.  The signed agreement was faxed to ETS, but that transmission only included the first three pages of the document.  The final four pages of the MAA, which included the forum selection clause, were not sent.[2]

In July of 2016, the Club filed a complaint in the District Court alleging that ETS breached the MAA by overbilling.  The Club also alleged that ETS violated federal law by charging fees in excess of the mandated maximum for certain transactions.  The Club also attempted to certify a class to include other merchants who executed MAAs with ETS.  The Club averred that ETS failed to provide it (and other putative class members) with a copy of the forum selection clause, and that the clause was both unenforceable and unconscionable in any event.  ETS filed a motion to dismiss, arguing *forum non conveniens* given the existence of the forum selection clause.

The District Court held a hearing and ruled from the bench.  It identified three issues: the Club's contention that it never saw the forum selection clause, the validity of that clause, and whether the clause was enforceable.  After dismissing the Club's argument that it never saw the forum selection clause, the District Court ruled that the clause was valid and should be enforced.  It then dismissed the Club's complaint without prejudice to it being re-filed in the appropriate state court.

---

[2] ETS explains that the first three pages of their MAA contain information about the client (merchant), its name, address, bank account numbers, and annual sales volume.  The last four pages contain terms and conditions that the merchant agrees to when contracting for ETS' services.  ETS uses a computer system they call a Merchant Application Management Interface (MAMI) to create and store these agreements.  Each ETS client has its own account in the MAMI that includes the signed copies of the MAA as well as other pertinent information.

3

II.

The Club timely appealed, raising three issues. First, it argues that the District Court erred by ruling the forum selection clause binding. Next, the Club claims the District Court erred as to the validity of the clause. The enforceability—or lack thereof—of the clause is the focus of the Club's last argument. We exercise plenary review over a district court's interpretation and enforcement of a forum selection clause. *Salovaara v. Jackson Nat. Life Ins. Co.,* 246 F.3d 289, 295 (3d Cir. 2001).

A.      *The Forum Selection Clause is Binding.*

Where the parties to a contract "have specified the forum in which they will litigate disputes arising from their contract, federal courts must honor the forum-selection clause '[i]n all but the most unusual cases.'" *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 397 (3d Cir. 2017) (quoting *Atlantic Marine Construction Co. v. U.S. District Court*, 134 S. Ct. 568, 583 (2013)). The Club first argues that they never received nor saw the MAA's forum selection clause, making this a "most unusual case." *See id.* We reject this argument for the simple reason that the record is void of any evidence to support their claim.

The Club claims it did not receive the entire MAA before signing it in December of 2007. The implication is that somehow the Club only received the first three pages of the document, not the last four where the forum selection clause is located. The record belies this argument. First, and as noted by the District Court, the Club's president acknowledged that he received the complete seven-page version of the MAA and understood its terms and conditions prior to signing it. Second, ETS introduced evidence

4

regarding its MAMI system which is used to create the underlying MAA. This system generates a single document, and there is no evidence on this record that the final four pages were not sent to the Club at the time the MAA was created. And third, the pages of the MAA that were signed by the Club expressly reference the terms and conditions of the agreement, one of which is the forum selection clause. The Club offered nothing to challenge this evidence. Therefore, given this lack of evidence that the Club never received the forum selection clause, the District Court did not err by holding the Club to the terms and conditions of the MAA.[3]

B.      *Validity of the Forum Selection Clause*

The Club next maintains that if the forum selection clause is to be considered, the District Court erred by enforcing it because it was invalid. This is a difficult argument to make, given that we presume the validity of such clauses. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). In invalidating a forum selection clause, we typically look for evidence of fraud or over-reaching. *See Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.3d 1207, 1218 (3d Cir. 1991). We agree with the District Court that the Club—which has the burden here—presented no evidence to establish that the clause was included in the MAA based on any fraud, or was the result of ETS' over-reaching.

The Club also maintains that the forum selection clause is both procedurally and substantively unconscionable. According to the Club, the clause is procedurally

---

[3] The Club's argument that the terms and conditions section of the agreement is a separate and distinct from the MAA is meritless. The MAA defines "Agreement" as the "terms and conditions and any supplementary documents indicated herein." The Club's argument fails given this language.

5

unconscionable because it was not included in the MAA they executed. Like the District Court, we reject this position because it is not supported by the record.

Nor is the provision substantively unconscionable. The Club argues that since Virginia does not have a procedure or mechanism to bring class action lawsuits akin to Fed. R. Civ. P. 23, the forum selection clause is substantively unreasonable. This argument misses the mark for a couple of reasons. First, it is not necessarily the case that because an agreed-to forum does not have the same procedures or policies as other fora, such a selection clause is substantively unconscionable. *See, e.g., Wong v. PartyGaming Ltd.*, 589 F.3d 821, 829 (6th Cir. 2009) ("[t]he fact that parties will have to structure their case differently than if they were litigating in federal court is not a sufficient reason to defeat a forum selection clause."). Second, the Commonwealth of Virginia, as the Appellee points out, has practices and procedures available that parallel those related to federal class actions. For example, courts in Virginia have acknowledged the "representation of the parties" doctrine, by which one person is permitted to bring suit on behalf of herself and others. *See, e.g., Miller v. Nat'l Wildlife Fed.*, 1987 WL 4887171 at *1 (Va. Cir. Ct., 1987); *Indian Creek Sales v. Adkins*, 301 F. Supp. 2d 555, 563 (W. D. Va. 2004). The clause is not, therefore, substantively unreasonable.

C.     *The Forum Selection Clause Does Not Violate Public Policy*

We likewise reject the Club's argument that the forum selection clause violates public policy. "A forum-selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement demonstrates that enforcement of the clause would violate a strong public policy of the forum." *In re: Exide Technologies*, 544 F.3d

6

196, 218 n.15 (3d Cir. 2008) (citations omitted). We again note that such clauses are to be given "controlling weight in all but the most exceptional cases." *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring). The Club bears the burden here, and has not met it. It seems to us, and as noted by the District Court, the only public policy implicated by these proceedings is the one favoring the enforcement of forum selection clauses in these type of contracts between these sophisticated parties.

D.    *The forum selection clause should be enforced.*

Having concluded that the forum selection clause is valid, we are left with the question of whether it should be enforced. We have little difficulty concluding that it should. We enforce a valid forum selection clause pointing to a state forum through the doctrine of *forum non conveniens*. *Atl. Marine Construction Co. v. U.S. District Court*, 134 S.Ct. 568, 580 (2013). We review a dismissal based on that doctrine for an abuse of discretion. *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 631-32 (3d Cir. 1989). "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Four factors guide a district court's exercise of discretion in its *forum non conveniens* analysis: "(1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum ... ; (3) relevant private interest factors affecting the convenience of the litigants; and (4) relevant public interest factors affecting the convenience of the forum." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (internal quotation marks and footnotes omitted).

7

Typically, a court must review these points in making a determination as to the most convenient forum. But, analysis changes when a *forum non conveniens* motion is premised on a valid forum-selection clause, as it is here. *Atl. Marine*, 134 S. Ct. at 581. In other words, where the parties have agreed to a valid forum selection clause, they have, in effect, waived their right to challenge the convenience of the selected forum. *Id*. "Only under extraordinary circumstances unrelated to the convenience of the parties" should a forum selection clause be overturned. *Id*. No such circumstance is present in this case. "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id*. at 583. Here, the District Court correctly noted that the Club did not meet its heavy burden. Not only will Virginia law apply in this case, but ETS' headquarters, records, and witnesses are located in that jurisdiction. The only connection the Club has to Pennsylvania is that its headquarters is located there. It was not an abuse of discretion for the District Court to enforce the forum selection clause.

III.

For the foregoing reasons, we will affirm the District Court's ruling dismissing the cause.